**Rosa Carmina Villa RIOS, Plaintiff,**

v.

**Benjamin CIVILETTI, Defendant.**

**Civ. No. 80–2271 (JP).**

United States District Court,
D. Puerto Rico.

Aug. 18, 1983.

Pablo J. Santiago Hernández, San Juan & Santurce, P.R., for plaintiff.

Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION, DECLARATORY JUDGMENT AND ORDER

PIERAS, District Judge.

This action for a declaratory judgment of citizenship is brought by the plaintiff intervenor, María Guadalupe Villa Ríos, pursuant to the provisions of the Nationality Act of 1940, Section 205, 8 U.S.C. § 907, subsequently reenacted and codified in the Immigration and Nationality Act of 1952, Section 301(a)(7), 8 U.S.C. § 1401(a)(7), Section 309(b), 8 U.S.C. § 1409(b), the Declaratory Judgment Act, 28 U.S.C. § 2201 and Section 360 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1503(a).

On March 16, 1983, the plaintiff moved for summary judgment. Counsel for plaintiff and the defendant agency, Immigration and Naturalization Service, filed a stipulation containing the relevant and uncontested facts of the case, along with accompanying legal memoranda. The Court takes notice that the sister and brother of the movant, former co-plaintiffs in these proceedings, Rosa Carmina and Miguel Enrique Villa Ríos, have been granted certificates of citizenship by the defendant on having received and evaluated the same evidence on which plaintiff rests her claim to citizenship. The Court has carefully examined the file of this case and finds that the controversy is ripe for adjudication. That being the case, plaintiff's motion for Summary Judgment is meritorious and the Court disposes this matter under the applicable statutes and case law.

## THE STIPULATED FACTS

On December 21, 1944, Neftalí Ayala Ferrer, a native of Ciales, Puerto Rico, serving at that time in the United States Army, abandoned his unit stationed at Burbank, California, and fled south to Mexico. While living in Mexico, he entered into a relationship with a Mexican national named Lucía Ríos Flores and fathered three children: María Guadalupe, Miguel Enrique and Rosa Carmina. María Guadalupe was born on April 13, 1952. On November 6, 1952 she was inscribed in the Civil Registry of Mexico at the request of her parents, both of whom appeared before an officer of the Civil Registry and attested to being the father and mother of the child. She appears registered with the surname Villa—which is the surname adopted by her father during his sojourn in Mexico from 1945 to 1960. He was then known by the name of Alfonso Villa Fernández, an alias used to conceal the fact of his desertion from the United States Army, his condition as a fugitive and the circumstances of being an illegal immigrant in Mexico.

On November 1, 1968, shortly after the death of her mother, María Guadalupe, who was then sixteen years old, along with her younger brother and sister, entered the United States and went to live in Ciales, Puerto Rico, with their paternal aunt Ana; the sister of Neftalí Ayala Ferrer (a.k.a. Alfonso Villa Fernández). Since then, María Guadalupe has resided continuously and uninterruptedly in Puerto Rico.

On November 21, 1974, Neftalí Ayala Ferrer, who had returned to Puerto Rico in 1960, appeared before the Immigration and Naturalization Service at San Juan and requested a certificate of citizenship for each of his three children, since they were children of a United States citizen. His request was denied at the time because he could not establish that Alfonso Villa Fernández, the person acknowledging them in the birth certificates issued by the Mexi-

can Civil Registry, was the same person appearing before the Immigration and Naturalization Service as their citizen father. This impasse lasted for several years. In 1980, however, the plaintiffs filed the present action and through evidence, made available to them during discovery by the F.B.I. all statements given by their father in 1974 to the I.N.S. were duly corroborated. As a result, the petitions of Rosa Carmina and Miguel Enrique Villa Ríos for a certificate of citizenship were approved. They have been declared to be citizens of the United States since their respective birthdates.

Why then, we must ask, has the Immigration and Naturalization Service denied to María Guadalupe the status accorded to her sister and brother both of whom were concededly born, acknowledged and reared under apparently identical circumstances?

The defendant argues that at the time of her father's appearance in November 1974 before the Immigration and Naturalization Service attesting to his paternity and, consequently, to his children's citizenship, María Guadalupe was already beyond the minority required by the statute during which recognition of legitimacy and transmission of citizenship can take effect. On November 1974, María Guadalupe was already twenty-two years old. Implied in defendant's contention is the argument that the only valid acknowledgment that could benefit plaintiff and confer upon her the status of legitimate according to the Immigration laws is the acknowledgment made by her father on November 1974 before the Service. The defendant attaches no importance or legal effect to the Civil Registry in Mexico, in which plaintiff shortly after her birth was registered because, allegedly, only children born of married parents are considered legitimate in Mexico. The defendant further argues that since plaintiff's father was domiciled in Mexico, Mexican Law is controlling over the issue of legitimacy.

The plaintiff agrees that what occurred on the instance of her father's appearance before the Immigration and Naturalization Service in November 1974 is a distinct act of recognition which has legal effect of its own. Nonetheless, she contends that said act is also a reiteration of a more solemn and formal act which occurred shortly after her birth and which conferred upon her the status of a legitimate within the purview of the Immigration laws and, consequently, entitles her to U.S. citizenship, whether the Law of Mexico or the Law of Puerto Rico is found to be controlling over the issue.

### THE APPLICABLE FEDERAL STATUTE

The statute which governs the transmission of citizenship at birth is Section 301(a)(7) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1401(a)(7), which provides in its pertinent part:

(a) The following shall be nationals and citizens of the United States at birth:

1. . . .

7. a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totalling not less than ten years, at least five of which were after attaining the age of fourteen years . . .

Section 309(a) and (b), 8 U.S.C. § 1409(a), (b), extends the benefits of Section 301(a)(7) to children born out of wedlock on or after January 13, 1941 and prior to the effective date of the Immigrant and Nationality Act of 1952—December 24, 1952.

Section 309(b) reads:

(a) . . .

(b) "Except as otherwise provided in Section 405 of this Act, the provisions of section 1401(a)(7) of this title shall apply to a child born out of wedlock on or after January 13, 1941, and prior to the effective date of this chapter, as of the date of birth, if the paternity of such child is established before or after the effective date of this chapter and while

such child is under the age of twenty-one years by legitimation."

The term "child" as it is employed in the preceding section is defined by Section 101(b)(1)(C) of the Act of 1952.

"The term 'child' means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and except as otherwise provided in Sections 1431 to 1434 of this title, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption."

One last concept, undefined by the Act, must be delved into; it is, we feel at the gist of this controversy—What does the term legitimation mean in the context of the statute?—Or, framing the issue in terms of the case at bar: "Did the acknowledgment of María Guadalupe Villa Ríos by means of her inscription in the Civil Registry of Mexico seven months after her birth by both of her parents satisfy the requisite of legitimation during minority as a condition precedent to the transmission of citizenship from her citizen father as provided in the Immigration and Nationality Act?"

To grasp the significance and scope of the term "legitimation" as employed in the Immigration and Nationality Act, it should be borne in mind that the Act is a statute of general application for all the states comprising the American federation; consequently, the term is meant to serve as a guideline to be followed by the executors of the law and to be applied in practice vis á vis the law of many and diverse countries, for some of which, and because of their culture, sociological composition and other national idiosyncrasies, the term is totally devoid of meaning. *Lau v. Kiley*, 410 F.Supp. 221. In some instances the criteria which separates legitimates from illegitimates have been found to be irrelevant to

the purposes of the statute. *Matter of Lee*, I and N Interim Decision No. 2606; *Reyes v. Immigration and Naturalization Service*, 478 F.Supp. 63. We must avoid the pitfall of confusing or equating the term legitimation as it is employed in the immigration laws with the same word as used for example, in the context of filiatory proceedings within a foreign legal system or even in the context of Puerto Rico's laws on filiation. It is our opinion that the drafters of the Act did not intend to delegate the definition of the term on foreign legislation or in the definition that each of the states has attached to it—an undesirable practice that would undoubtedly produce results in conflict with our constitutional order. The purpose of the term, as can be known from the letter of law, case law and administrative decisions addressing the matter is to insure: 1) that the person claiming citizenship has the blood of an American citizen; 2) the existence of a legal paternofilial relationship, i.e.—custody, duty to support, right to use family name, etc.; and 3) the absence of fraud in claiming citizenship. *Compagnie Generale Transatlantique v. United States*, 78 F.Supp. 797 at p. 799, 111 Ct.Cl. 601; *Matter of Buenaventura*, I and N Interim Decision No. 2363; *Delgado v. Immigration and Naturalization Service*, 473 F.Supp. 1343.

The test to determine if a child has been "legitimated" within the meaning and scope of the statute is not whether he is actually identified as legitimate but whether he enjoys for all relevant purposes the same conditions of so called legitimate children and that his direct descent from a citizen is sufficiently established. The case of children born out of wedlock in Puerto Rico is illustrative of the point. Plaintiff's brother and sister, for example, both of whom are deemed to be legitimated within the meaning of the Immigration and Naturalization Act, are not legitimate if we adhere to strict legal usage since, according to the Civil Code of Puerto Rico, only children whose parents are married at the moment of their birth or who subsequently marry can be considered legitimate. However,

since 1952 when the Constitution of the Commonwealth of Puerto Rico became law, all children have with respect to their parents and to the estate left by the latter, the same rights as legitimate children. This is, of course, why they are considered *legitimate* within the meaning of the Immigration Statute. See Section 441 of the Civil Code of Puerto Rico.

### THE CONTROLLING SUBSTANTIVE LAW

The Immigration and Naturalization Service argues that only children born of married parents or of parents who subsequently marry after their birth are considered legitimate under Mexican Law. This allegation, however, remains unsubstantiated. We find in fact that the Mexican Civil Code provides as follows:

> *Art. 360:* "The filiation of children born out of wedlock is derived with respect to the mother, from the mere fact of birth. With respect to the father, it is established only by acknowledgment or by a judgment declaring his paternity"

> *Art. 369:* "The acknowledgment of a child born out of wedlock shall be made in one of the following ways: *In the birth certificate, before the official of the civil registry;* by special record before the same official; by public instrument; by will."

> *Art. 389:* "A child recognized by its father, by its mother, or by both, has the right: *To use the fathers' surname or both surnames of those recognizing the child; to be supported by those persons who recognize the child; to receive the hereditary share and the support designated by law."*

The rights which Art. 389 confers on children acknowledged by both of their parents in Mexico are the same rights which Art. 118 of the Civil Code of Puerto Rico extends to *legitimate* children.

Art. 118 provides: Legitimate children have the right:

1. To bear the family name of the father and mother.
2. To be supported.
3. To the legitimate inheritance.—31 LPRA § 466.

In the case at bar, it seems to us that the reluctance of the defendant agency to acknowledge plaintiff's citizenship stems from its unquestioning acceptance of a label which in its practical application is meaningless. We wonder what rights do legitimate children in Mexico enjoy that children acknowledged in the manner prescribed by the aforementioned Article 389 of the Mexican Civil Code do not. Whatever the differences, if any, the I.N.S. has not proffered any.

In fairness to the defendant, it must be said that some decisions adhere to the view that a legitimate must necessarily mean born of married parents or of parents who subsequently marry. We are of the opinion, however, that the latter is not the most enlightened view. It is evident that a child acknowledged by both parents in Mexico has for all relevant legal purposes the same rights as legitimate children and that the relationship established amply satisfies the letter and spirit of the statute. If Mexican Law were found to be controlling over the matter, plaintiff would have the same status as a legitimate child and consequently, be entitled to citizenship.

We need not reach such a conclusion. The substantive law governing the issue of legitimation in the present case is the law of Puerto Rico.

■ Plaintiff's father, Mr. Ayala Ferrer, lived continuously in Puerto Rico until he was inducted into the United States Army in January 1944. Less than a year later, he abandoned his unit and escaped to Mexico. Although we harbor no doubts as to the voluntariness of his flight, the total circumstances of his desertion must be examined to know if his stay, however long, in Mexico worked to effect a change of his domicile which was, of course, Puerto Rico.

It is well established that for a change of domicile, there must be physical presence in a new abode and the intent to remain therein.

We know that Neftalí Ayala Ferrer's exodus to Mexico was not the act of an ordinary citizen traveling with the intent of establishing his residence at a particular place and from there on lead a normal life. Such actions are well thought, deliberate and usually planned months or years in anticipation. It seems that circumstances more than anything else dictated the time and direction of his flight. Mr. Ayala entered Mexico as a deserter, a fugitive from justice; he had abandoned his unit during wartime, an offense punishable by death (10 U.S.C. § 885). Conviction of this offense by Court Martial was also a ground for expatriation; if convicted, he could have been deported and banished permanently from U.S. territory. Had he returned to the United States at the time he would have risked losing his citizenship and the right to transmit it to his offspring—precisely the condition enjoyed today by two of his children. We object to Mr. Ayala's unpatriotic conduct, but considering the severe penalties that awaited him upon his return, it is quite understandable why he did not return sooner to Puerto Rico. Ironically, however, it was his firm determination to return, his "animus revertendi" which compelled him to wait until an opportune time when his return would be normal and permanent. In any event, we need not speculate as to Mr. Ayala Ferrer's "animus revertendi". The course of events as they actually happened demonstrate that he always harboured a firm and definite intention of returning to Puerto Rico and that, as soon as he could, he returned. The Immigration and Naturalization Service has conceded this much in its Opposition to Summary Judgment.

The F.B.I. file, gathered on account of Mr. Ayala's desertion and made available to plaintiff, reveals that her father never legalized his stay in Mexico; his permanence therein was as a fugitive from U.S. Justice and in continuous violation of Mexican Immigration laws. This is the reason why he adopted and always maintained an assumed identity. Having the power to regulate and determine who may be domiciled within its boundaries is an inseparable attribute of every sovereign nation; no domicile can be acquired by an individual whose entry into a country was attained clandestinely and as a fugitive from justice. Under these circumstances, the domicile of origin remains the true and permanent domicile.

We conclude, therefore, that plaintiff's father always retained his domicile of origin—Puerto Rico. Consequently, the law of Puerto Rico is determinant upon the issue of plaintiff's legitimation even if her acknowledgment was performed in Mexico. See Article 9 of the Civil Code of Puerto Rico—31 LPRA 9 and *Martínez v. Widow of Martínez,* 88 P.R.R. 429 at p. 436–437.

The acknowledgment of María Guadalupe Villa Ríos by both of her parents, one of which was a United States citizen, by means of her inscription in the Civil Registry of Mexico during her minority makes her a legitimate child under the law of Puerto Rico, the purview of the Immigration and Nationality Act and entitles her to United States citizenship. *Petition for the Naturalization of Fraga,* 429 F.Supp. 549; *Matter of Bautista,* I and N Interim Decision No. 2731.

In view of the foregoing, this Court hereby declares that María Guadalupe Villa Ríos is a citizen of the United States since April 13, 1952, her birthdate. She is to be accorded all rights and privileges attending to that condition.

It is further ORDERED that the defendant, Immigration and Naturalization Service, issue her a certificate of citizenship upon her appearance before its offices.

IT IS SO ORDERED.