**Mary Ruth BURGESS,**
**Plaintiff-Appellee,**

v.

**Edwin MEESE as U.S. Attorney General and Immigration & Naturalization Service, Defendants-Appellants.**

**No. 85–3916.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided Oct. 14, 1986.

Paul D. Edmondson, Yakima, Wash., for plaintiff-appellee.

Joan E. Smiley, Eloise Rosas, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before WRIGHT, TANG and REIN-HARDT, Circuit Judges.

TANG, Circuit Judge:

The Attorney General appeals the district court's grant of summary judgment declaring Mary Ruth Burgess a citizen of the United States under the Immigration and Nationality Act §§ 301(g) and 309(a), 8 U.S.C. §§ 1401(g) and 1409(a)(1983). We affirm.

## FACTS

Mary Ruth Burgess ("Mary") was born September 28, 1962 in Tijuana, Mexico. Her mother, Josefine Carrillo, is a native of Colima, Mexico. Her father, Don L. Burgess ("Don"), was a native of Pikesville, Tennessee, USA. Mary's parents never legally married, but lived together in Tijuana, Mexico for ten years until Don's death on June 1, 1963 in Tijuana. Mary's birth certificate was registered by her mother on June 7, 1963 in Tijuana, six days after Don's death.

Mary entered the United States in 1979. She married in Yakima, Washington on September 27, 1980. On April 15, 1983, she obtained a declaration of paternity from the Superior Court of Washington for Yakima County establishing Don as her natural and legal father pursuant to Wash.Rev. Code Ann. § 26.26 (West 1986).

Mary submitted her claim to citizenship to the Immigration and Naturalization Service which was denied by the District Director on October 25, 1983. This decision was upheld within the Agency's appeal process.

On April 27, 1984, Mary filed a complaint for declaratory judgment of citizenship in the district court. The district court dismissed her complaint with prejudice on September 20, 1984 because her marriage prevented her from meeting the statutory definition of "child" under 8 U.S.C. § 1101(b)(1)(C). The district court determined, however, that Mary's residence in Washington allowed her legitimation under the laws of Washington for the purpose of derivative citizenship except that she was not "unmarried."

On November 1, 1984, Mary obtained an annulment of her marriage from the Superior Court of Washington for Yakima County. The annulment was granted on the ground that she married while still a minor without the consent of her parent or guardian. Following her annulment, the district court on April 8, 1985 granted her motion pursuant to Fed.R.Civ.P. 60(b) to vacate its prior order of September 20, 1984, and then granted her summary judgment motion declaring her a statutory citizen of the United States. The Attorney General appeals. We affirm.

## STANDARD OF REVIEW

The granting of summary judgment is reviewable *de novo*. *Haluapo v. Akashi Kaiun, KK*, 748 F.2d 1363, 1364 (9th Cir. 1984). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56.

## DISCUSSION

This case presents the question whether a daughter born in Mexico, of a Mexican citizen and a United States citizen who never legally married, can satisfy the requirements for statutory citizenship under the Immigration and Nationality Act §§ 301(g) and 309(a), 8 U.S.C. §§ 1401(g) and 1409(a) (1983).

Under 8 U.S.C. § 1401(g), a person shall be a national and citizen of the United States at birth who is:

born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

The district court found, and it is undisputed, that Don was physically present in the United States for the period required by 8 U.S.C. § 1401(g) so that a child born to him out of wedlock may acquire United States citizenship. Section 1401(g) is applicable under section 1409(a) to children born out of wedlock "as of the date of birth ... if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." 8 U.S.C. § 1409(a). Thus, to obtain citizenship Mary must prove legitimation took place while she was under twenty-one years of age.

■ Legitimacy is a legal concept, and the law determines whether and under what circumstances a child it has denominated illegitimate may become legitimate. *Lau v. Kiley*, 563 F.2d 543, 548 (2d Cir. 1977). The Immigration and Nationality Act provides that a child who is unmarried and under twenty-one years of age can be legitimated

under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1)(C) (1983) (emphasis added). Under the statute a child may be legitimated under any of four potential sources of law that recognizes legitimating acts of the parent, and we have held that a state can recognize legitimating acts occurring before either the father or child have any contact with that state. *Kaliski v. Dist. Dir. of Immigration and Nat. Serv.*, 620 F.2d 214, 216 (9th Cir.1980).

■ In the case at bar, the Attorney General contests the district court holding of Mary's legitimation under Washington law, and contends that the government has long required that legitimation occur under the law of the father's domicile, which is Mexico or California in the instant case. He cites opinions of the Attorney General, Board of Immigration Appeals, and the federal district court in *Rios v. Civiletti*, 571 F.Supp. 218 (D.Puerto Rico 1983), in support of his position. This interpretation of 8 U.S.C. § 1409(a) by the Attorney General contradicts the plain language of the statute, 8 U.S.C. § 1101(b)(1)(C), which provides that a child, for the purposes of 8 U.S.C. § 1409(a), can be legitimated under "the law of the child's residence or domicile, *or* under the law of the father's residence or domicile."

■ Here, the law of Washington state, where Mary resides, is the law of the "child's residence or domicile", § 1101(b)(1)(C), and it provides that a man is presumed to be the natural father of a child if "[w]hile the child is under the age of majority, he receives the child into his home and openly holds out the child as his child." Wash.Rev.Code Ann. § 26.26.040 (West 1986).[1] The operative facts here are

---

1. Even were we to apply California law as the     law of the father's domicile to legitimating acts

that Don, Mary's father, lived with Josefine Carrillo, Mary's mother, for ten years prior to his death, and during those years Mary was born to the union. Don continued to live with Josefine after Mary's birth until his death and inferentially held Mary out as his natural daughter. These are the facts explicitly found by the Superior Court of Washington for Yakima County on April 15, 1983 and implicitly by the district court on September 20, 1984 and April 8, 1985. Don legitimated Mary by receiving her into his home and openly holding her out as his child from her birth until his death.

The result here accords with our decision in *Kaliski* (California law applied to legitimating acts that occured in Yugoslavia); the Board of Immigration Appeals' decision *In re Fulgencio*, 17 I & N Dec. 471 (1980) (California law applied to legitimating acts that occurred in the Philippines) and the district court's decision in *Rios v. Civiletti* (Puerto Rican law applied to legitimating acts that took place in Mexico.) In each case the law of the forum state was applied to acts of a father acknowledging and recognizing the child as his own, and these acts occurred prior to either the child or the father having contact with the forum state.

The Attorney General's final contention is that the district court improperly accorded deference to the Washington Superior Court paternity decree which it asserts was based on the birth certificate filed six days after Don's death by Mary's mother in Mexico. We agree that the filing of the birth certificate by the mother after the death of the father cannot qualify as a legitimating act by the father. We disagree, however, that the Washington decree is so based because it nowhere recites the fact of the registration of the birth certificate. Rather it found that the child was born to the father and mother who were "never married, but lived together in Tijuana, Mexico, for ten (10) years until Don Burgess' death in 1963 in Tijuana."

The district court determined that these facts were sufficient to support the conclusion that Don, the father, legitimated Mary, the daughter, for purposes of 8 U.S.C. § 1101(b)(1)(C). We should point out that the United States was not bound by the decree of the Washington Superior Court and was not collaterally estopped to challenge and attack the validity of that decree. The Government, however, offered no evidence to cast doubt upon that decree. Neither was there any disagreement between the parties as to the material facts. The district court, in an independent, adversarial proceeding with the Attorney General and the Immigration Service in opposition, properly concluded that legitimation took place when the father received the child into his home and held her out as his child, at a time before the child reached the age of eighteen years, and while the child was in the legal custody of the legitimating parent. Mary is entitled to derivative citizenship under 8 U.S.C. §§ 1401(g) and 1409(a). The grant of summary judgment by the district court declaring Mary Ruth Burgess a citizen of the United States is

AFFIRMED.

EUGENE A. WRIGHT, Circuit Judge, concurring:

I concur in the judgment because Washington law compels it, as do federal statutes. But Judge Tang's recital of the facts causes me some concern. I see the potential for fraud in the entry of ex parte paternity decrees and believe we need more stringent procedures for establishing legitimation. I also disagree with the method by which the majority reaches its conclusion to affirm. It attributes to the district court findings of fact that were never made.

Mary Burgess was eight months old when Don Burgess died. Not until several days after his death did her mother register the birth in Mexico, showing Don as the father. Twenty years later, Mary se-

which occurred in Mexico, the Attorney General's appeal would fail because California and Washington have both adopted the Uniform

Parentage Act. This same statutory language can be found in California Civil Code Ann. § 7004(a)(4) (West Supp.1986).

cured a paternity decree in an ex parte proceeding in a Washington superior court. She then filed for a declaratory judgment of citizenship, but her marriage prevented her from meeting the statutory definition of "child." Not to be dissuaded by the inconvenience of a marriage, she had it annulled, alleging that she married while still a minor without consent of her parent. She had married one day before her eighteenth birthday.

By not defining "legitimation," 8 U.S.C. § 1409(a), Congress has invited fraud. The facts of this case demonstrate the potential for fraudulent claims to United States citizenship.

The last paragraph of the majority opinion says that "the district court was not bound by the decree of the Washington Superior Court nor was the United States collaterally estopped to challenge that decree." Majority Opinion at 341. As a technical matter, I agree. The problem is that, as a practical matter, the government and the district court were bound.

Mary is a United States citizen if she was 1) born outside the United States, 2) one of her parents was a U.S. citizen, and 3) the citizen parent met certain requirements of physical presence in the United States. 8 U.S.C. § 1401(g).[1] Because Mary was born out of wedlock, however, section 1401(g) applies only if she established paternity by legitimation before she turned twenty-one. 8 U.S.C. § 1409(a).[2]

Section 1409(a) uses the term "child." For Mary to have qualified as a child, she must have been an unmarried person under twenty-one who was legitimated under the law of her residence or domicile, or her father's residence or domicile.[3] 8 U.S.C. § 1101(c)(1).[4]

Mary turned twenty-one on September 28, 1983. To be valid under section 1409(a), her legitimacy must have been established before that date. The district court's judgment did not establish Mary's legitimacy because her complaint was not filed in that court until April 27, 1984. Any action by the district court to establish legitimacy

---

1. 8 U.S.C. § 1401(g) provides in relevant part:
The following shall be nationals and citizens of the United States at birth:
(g) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years. . . .

2. 8 U.S.C. § 1409(a) provides in relevant part:
The provisions of paragraph [ ] . . . (g) of section 1401 of this title . . . shall apply as of the date of birth to a child born out of wedlock . . . if the paternity of such child *is established* while such child is under the age of twenty-one years by legitimation. (Emphasis added.)

3. The majority opinion says that "we have held that a state can recognize legitimating acts occurring before either the father or child have any contact with that state." Majority op. at 340. A more accurate statement of our precedent would be that a state legitimation *law*, which recognizes legitimating acts occurring before either the father or child have any contact with that state, is sufficient under which to *estab-*

*lish* legitimation. *See Kaliski v. District Director of Immigration and Naturalization Service*, 620 F.2d 214, 216 (9th Cir.1980).

4. 8 U.S.C. § 1101(c)(1) provides in relevant part:
(c) As used in subchapters III of this chapter—
(1) The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, . . . if such legitimation . . . takes place before the child reaches the age of sixteen years and the child is in the legal custody of the legitimating . . . parent or parents at the time of such legitimation. . . .
The majority opinion erroneously refers to section 1101(b)(1)(C) as providing the relevant definition of "child." Majority op. at 339; *id.* at 340; and *id.* at 341. That definition does not apply to section 1401 or 1409.
The differences between the two definitions are 1) subsection (c) prefaces everything after "under twenty-one years of age" with "and includes," which is descriptive, rather than "who is," which is restrictive; and 2) subsection (c) calls for legitimation before the child turns sixteen, while subsection (b) requires it before age eighteen.

would not have occurred soon enough to bring Mary within section 1409(a). Rather, the district court decided whether Mary's legitimacy had *already* been established, either under the laws of Mexico, by the late-filed birth certificate, or under the laws of Washington, by the ex parte paternity decree. Those were the only two "legitimacy-establishing" acts that occurred before Mary was twenty-one.

The majority opinion holds that there was a third legitimacy-establishing act: Don Burgess's living with his daughter until his death eight months after she was born. *See* Majority op. at 341 ("[Don] inferentially held Mary out as his natural daughter.... [He] legitimated Mary by receiving her into his home and openly holding her out as his child from her birth until his death."); and at 341 (facts found by the district court were "sufficient to support its conclusion that Don, the father, legitimated Mary, the daughter").

The majority refers to fact findings not in the record. From the district court's two decisions it is clear that it relied entirely on the superior court decree as establishing Mary's legitimacy.

In its September 19, 1984 decision granting the government summary judgment, the court said:

Defendants contend that as plaintiff was married at the time of the Yakima County Superior Court Order she was not within the statutory definition of a child....

Plaintiff contends that she has fulfilled all of the statutory requirements for citizenship and that she was properly legitimated in Washington prior to her twenty-first birthday.

In deciding the issue thus presented by the parties before it, the district court held:

Plaintiff's residency in Washington State would permit a determination of legitimacy in Washington if plaintiff satisfied all the requirements of § 1101(c). However, plaintiff was married at the time of the Washington court decree and thus plaintiff is not within the statutory definition of a child and thus the provi-

sions of § 1409 are expressly inapplicable.... Accordingly, plaintiff has not met the statutory elements for citizenship.

Similarly, on April 8, 1985, in its order granting Mary's motion for summary judgment after reopening the case, the court held:

This court's Order of September 20, 1984 stated that legitimization would have been valid had the plaintiff not been married at the time of the Washington court decree.... This court further stated that the plaintiff's lack of unmarried status was the only bar to the granting of her request for statutory citizenship under 8 U.S.C. § 1409.

Subsequent to the entry of the Order of September 20, 1984, plaintiff has come forward with substantial evidence demonstrating that her marriage was invalid under the laws of the State of Washington....

Plaintiff has therefore overcome the only obstacle to satisfaction of the requirements for issuance of statutory citizenship. She has met the definition of "child" under 8 U.S.C. [§] 1101(c), was properly legitimized as required by 8 U.S.C. [§] 1409[, and] is therefore entitled to a decree awarding statutory citizenship as prescribed by 8 U.S.C. § 1401(g).

Nowhere in either of its orders did the district court rely on any action by Don Burgess as establishing Mary's legitimacy. It did so only in a derivative sense in that it looked to the superior court paternity decree to see whether legitimacy was established before Mary turned twenty-one.

If the majority position is that the paternity decree is insufficient to establish paternity, either (a) because the government was not a party to that proceeding, (b) because allowing such an ex parte proceeding to establish legitimacy for citizenship purposes opens the door to fraud, or (c) because the decree was not granted before Mary was sixteen, the proper course is to remand to the district court to allow it to

find in the first instance the facts which the majority would like to say it had found.

With a broad definition of legitimation, the superior court decree bound the government as tightly as it would under the doctrine of res judicata. It is not that the government was bound by res judicata or collateral estoppel by the superior court's decree. It could not be, since it had neither notice nor an opportunity to be heard. Rather, because the section 1409 requires a child born out of wedlock to *establish paternity by legitimation* without defining how and by whom legitimation is to be established, the government and the district court, were in fact bound. The superior court paternity decree established Mary's legitimation. Since, in the district court, the government adduced no evidence to disprove legitimation or to prove that Mary defrauded the superior court, the district court did not err in granting Mary statutory citizenship.

The majority would have the government bound by Don Burgess's supposed acceptance of Mary in his home for eight months twenty-three years ago. The district court, on the other hand, bound the government by the superior court's decree that Mary was Don's natural and legal daughter. The problem is not with the findings of the district court but with the Immigration Act and Washington statutes as construed by the courts. The majority sees no problem. I do. Until Congress or an en banc panel of this court establishes more stringent procedures for establishing legitimacy, we must abide by state procedures. *See Kaliski v. District Director of Immigration and Naturalization Service,* 620 F.2d 214, 216 (9th Cir.1980) (California law which recognizes legitimating acts before the father and child have any contact with the state is applicable in immigration cases).