**Neal O'DONOVAN–CONLIN, David A. Conlin, III, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF STATE, Secretary of State Colin Powell, Defendants.**

No. C 02–2678 MJJ.

United States District Court, N.D. California.

Feb. 28, 2003.

As Corrected March 5, 2003.

James M. Byrne, Byrne Byrne Hashemi, San Francisco, CA, for Neal A. O'Donovan–Conlin, David A. Conlin, III, Plaintiff.

Scott T. Nonaka, Tracie L. Brown, U.S. Attorney's Office, San Francisco, CA, for U.S. Department of State, Colin Powell, Secretary of State, Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JENKINS, District Judge.

### INTRODUCTION

Presently before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment. For the reasons discussed below, summary judgment for plaintiffs is DENIED, and summary judgment for defendants is GRANTED.

### FACTUAL BACKGROUND [1]

On November 28, 1980, plaintiff Neal O'Donovan–Conlin ("O'Donovan-Conlin") was born in West Berlin, Germany, to plaintiff David Conlin III ("Conlin"), a U.S. citizen, and Heather O'Donovan, an Irish citizen. Conlin and Heather O'Donovan were unmarried at the time of O'Donovan–Conlin's birth. However, they were subse-

---

**1.** All of these facts were taken from the Joint Statement of Undisputed Facts In Support of Cross–Motions for Summary Judgment ("Joint Statement").

quently married in Arizona on August 28, 1991, and they lived together as husband and wife in Arizona for approximately three months.

Plaintiff O'Donovan–Conlin currently resides in San Francisco, California with his mother. He has lived in the United States with her since 1985. Plaintiff Conlin currently resides in Arizona. He has lived there for most of his life, except for vacations and temporary work in Saudi Arabia from January 1977 to July 1978 and in Germany from August 1978 to February 1981.

Plaintiff Conlin never agreed in writing to support O'Donovan–Conlin until the age of 18. However, Conlin requested that his parents draw from a trust fund set up for him in order to send money to Heather O'Donovan for support of their son, O'Donovan–Conlin. Conlin's parents sent Heather O'Donovan 25 checks for $200 each over the course of five and a half years (from 1993 to 1997).

Plaintiff O'Donovan–Conlin applied for citizenship to the United States in 1999, but his application was denied due to his unexcused failure to appear for a scheduled interview. He has also applied three separate times for a U.S. passport. All of his applications for a passport have been denied on the grounds that he has not met the statutory requirements for citizenship under 8 United States Code § 1409(a).

Plaintiffs seek summary judgment on the grounds that O'Donovan–Conlin has satisfied the statutory requirements for a U.S. passport under 8 U.S.C. § 1409(a). Alternatively, plaintiffs claim that 8 U.S.C. § 1409(a) violates equal protection. Defendants have also filed a summary judgment motion, alleging that plaintiffs have not fulfilled the statutory requirements and that there is no genuine issue of material fact to decide. Furthermore, defendants contend that the Supreme Court and the Ninth Circuit have already held 8

U.S.C. § 1409(a) to be constitutional, thus disposing of plaintiffs' equal protection claim.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the burden of proof at trial, the initial burden of showing that no genuine issue of material fact remains may be discharged by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issues of material fact. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor must the moving party support his or her own motion with evidence negating the non-moving party's claim. *See id.*

After the moving party makes a properly supported motion, the responding party must present specific facts showing that contradiction of the moving party's presentation of evidence is possible. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978). It is not enough for the responding party to point to the mere allegations or denials contained in the pleadings. Instead, it must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. The evidence must be more than a mere "scintilla;" the responding party must show that the trier of fact could reasonably find in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, summary judgment should be granted "[i]f the evidence is merely colorable ... or is not significantly probative." *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir.1987). In reviewing a motion for summary judgment, the court must take the responding party's evidence as true and all inferences are to be drawn in its favor. *See id.* at 1289.

However, in reviewing a motion for summary judgment, the Court does not make credibility determinations with respect to evidence offered, and it is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ...." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

## LEGAL ANALYSIS

I. *The Supreme Court and Ninth Circuit Have Already Held 8 U.S.C. § 1409(a) to be Constitutional*

■ Plaintiffs allege that 8 U.S.C. § 1409 deprives Conlin of equal protection of the law because it makes an improper distinction between U.S. citizen fathers of children born illegitimately outside the United States whose children seek U.S. passports after the age of 18, and those fathers in the same position whose children apply for a passport before turning 18. (Complaint at 6.) Furthermore, plaintiffs allege that the burden placed on fathers trying to transmit their citizenship to their illegitimate children born outside the United States is excessively onerous compared to the burden of proof placed on United States mothers. (Id.) For the rea-

sons discussed below, plaintiffs' claims fail as a matter of law.

8 U.S.C. § 1409 concerns children born out of wedlock. The statute provides that a person born out of wedlock abroad to a father with U.S. citizenship and a mother without U.S. citizenship shall be entitled to U.S. citizenship provided that:

(1) a blood relationship between the person and the father is established by clear and convincing evidence,

(2) the father had the nationality of the United States at the time of the person's birth,

(3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years-

(A) the person is legitimated under the law of the person's residence or domicile,

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a).

The Supreme Court has held that " § 1409(a) is consistent with the constitutional guarantee of equal protection." *Nguyen v. Immigration and Naturalization Service*, 533 U.S. 53, 58–59, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). In *Nguyen*, the Board of Immigration and Appeals rejected the plaintiff's claim to U.S. citizenship because he failed to establish compliance with 8 U.S.C. § 1409. *Id.* at 57, 121 S.Ct. 2053. Nguyen was born in Saigon, Vietnam to Joseph Boulais, a U.S. citizen, and a Vietnamese citizen, who were unmarried at the time of Nguyen's birth. *Id.* When Nguyen was almost six years old, he came to the United States with his

father and became a lawful permanent resident of Texas. *Id.*

Nguyen was not granted citizenship because he failed to establish compliance with 8 U.S.C § 1409(a). *Id.* Nguyen then appealed to the Court of Appeals for the Fifth Circuit, arguing that § 1409 violated equal protection because it provided different rules for attaining citizenship by children born out of wedlock outside of the United States, depending on whether the mother or father has American citizenship. *Id.* at 58, 121 S.Ct. 2053. In order for such a gender-based classification to withstand equal protection scrutiny, it must be established that the challenged classification serves "important governmental objectives" and the means employed are "substantially related to the achievement of those objectives." *Id.* at 60, 121 S.Ct. 2053. The Supreme Court found that § 1409 satisfies this standard and thus does not violate equal protection. *Id.* at 61, 121 S.Ct. 2053.

In its opinion, the Supreme Court focused on § 1409(a)(4), which relates to a citizen father's acknowledgment of a child while the child is under 18. The Supreme Court did not need to discuss § 1409(a)(3) because this section was added after Nguyen's birth, and Nguyen fell within a transitional rule which allowed him to apply either the current version of the statute, or the pre–1986 version of the statute, which did not contain a parallel to § 1409(a)(3). *Id.* at 60, 121 S.Ct. 2053. Therefore, the Court's ruling regarding § 1409(a)(4) was dispositive of that case. *Id.*

The Supreme Court held that two important governmental objectives are served by § 1409(a)(4). *Id.* at 62, 121 S.Ct. 2053. The first interest served is the importance of assuring that a biological parent-child relationship exists. *Id.* The second important governmental interest is that the child and the citizen parent have an opportunity to develop a relationship that consists of the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States. *Id.* at 64–65, 121 S.Ct. 2053. In the case of a citizen mother and a child born overseas, the opportunity to develop a relationship with the child exists at birth, when the mother has an initial point of contact with the infant. *Id.* at 65, 121 S.Ct. 2053. There is at least an immediate opportunity for mother and child to develop a meaningful relationship. *Id.*

Conversely, the opportunity to develop such a relationship with the unwed father is not inherent at birth. *Id.* The Supreme Court concluded that there is nothing irrational in recognizing that at the moment of birth, the mother's knowledge of the child and of parenthood is established in a way not guaranteed in the case of the unwed father. *Id.* at 68, 121 S.Ct. 2053. Thus, the means Congress adopted in order to ensure the opportunity for a relationship to develop between father and child—legitimation, acknowledgment of paternity in writing, or establishment of paternity by adjudication of a competent court—were valid and did not violate equal protection.

The Ninth Circuit has also upheld the constitutionality of § 1409. In *Ablang v. Reno*, 52 F.3d 801 (9th Cir.1995), the Court of Appeals reviewed § 205 of the Nationality Act of 1940 (the predecessor statute to § 1409(a)(4)), and held that there was a rational basis for the statute. *Id.* at 805. Two conditions were imposed on illegitimate children by § 205 of the Nationality Act of 1940:(1) proof of paternity and (2) a time limit for legitimation. *Id.* at 805. The *Ablang* court relied on *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), which upheld the constitutionality of 8 U.S.C. § 1101(b)(1)(D), a statute which excluded natural fathers and their illegitimate children from getting special immigration sta-

tus. *Id.* at 804. The *Fiallo* court concluded that Congress had determined that preferential status is not warranted for illegitimate children and their natural fathers because of a "perceived absence in most cases of close family ties as well as a concern with the serious problems of proof that usually lurk in paternity determinations." *Fiallo,* 430 U.S. at 799, 97 S.Ct. 1473. Relying on *Fiallo,* the Ninth Circuit concluded that there was a rational basis for both conditions imposed by § 205. Thus, the statute was held to be constitutional. *Ablang,* 52 F.3d at 806.

In addition to plaintiffs' claim that 8 U.S.C. § 1409(a) violates due process because of the different burdens placed on a U.S. mother versus a U.S. father, plaintiffs also claim that the statute is unconstitutional because of the distinction between U.S. citizen fathers whose children apply for citizenship prior to the age of 18, and those U.S. citizen fathers whose children apply for citizenship after the age of 18. (*See* Complaint at 6.) There are several flaws with this argument. First, these men are not in any special class in terms of an equal protection analysis. Second, *Ablang* held that the time limitation imposed by the predecessor statute was constitutional. *See Ablang,* 52 F.3d at 805. Congress has an interest is promoting "close family ties" and the court found there were legitimate reasons for the time limitation requirement. *Id.* Thus, plaintiffs' claim that 8 U.S.C. § 1409(a) is unconstitutional fails as a matter of law and

summary judgment is granted to the government with respect to plaintiffs' equal protection claim.[2]

## II. Plaintiffs Have Not Complied With All the Provisions of 8 U.S.C. § 1409(a)

An individual seeking citizenship under 8 U.S.C. § 1409(a) must first meet all of its conditions. *Nguyen,* 533 U.S. at 60, 121 S.Ct. 2053. It is undisputed that plaintiff has fulfilled the first two requirements of § 1409(a). (*See* Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") at 3.) Plaintiff Conlin has established by clear and convincing evidence that he is the father of O'Donovan–Conlin, and Conlin undisputedly had the nationality of the United States at the time of O'Donovan–Conlin's birth. The two provisions of the statute at issue are §§ 1409(a)(4)(A) and 1409(a)(3). For the reasons discussed below, plaintiffs have complied with § 1409(a)(4)(A) but have not complied with § 1409(a)(3).

### A. Plaintiff O'Donovan–Conlin Has Been Legitimated Under Arizona State Law, Thus Satisfying § 1409(a)(4)(A)

■ By virtue of the Arizona marriage of his parents, plaintiff O'Donovan–Conlin has been legitimated while he was under 18 years of age, thus fulfilling the requirement of 8 U.S.C. § 1409(a)(4)(A). The relevant portion of the statute provides that a person must be "legitimated under

**2.** Plaintiffs asserted at oral argument that the relevant distinction for equal protection purposes is between citizen fathers who wed prior to the minor achieving the age of majority and those who do not. Plaintiffs also distinguish the *Nguyen* decision on this same basis. However, plaintiffs' argument cannot prevail because the statute does not on its face distinguish between fathers who wed and those who do not wed. Moreover, even as applied, the marital status of the citizen father, post the birth of the child, is irrelevant to the

process of granting the child citizenship, as § 1409(a) requires that the father establish: (1) a blood relationship, (2) nationality, (3) financial support through a writing, and (4) that the person be legitimized under the law of the person's residence, or the father acknowledges paternity via a writing under oath, or through a court order. On this record, plaintiffs have failed to establish that the statute, as applied, embraces the distinction (between wed and unwed fathers) asserted in their equal protection claim.

the law of the person's residence or domicile" while the person is under the age of 18. 8 U.S.C. § 1409(a)(4)(A). However, legitimation for purposes of § 1409(a) is governed by 8 U.S.C. § 1101(b)(1)(C), which provides definitions of terms used in the United States Code. *See Burgess v. Meese*, 802 F.2d 338, 340 (9th Cir.1986); 8 U.S.C. § 1101(b)(1)(C).

 Legitimacy is a legal concept, and a state has the power to define what constitutes it, how to regulate it, or even to abolish the concept altogether. *Lau v. Kiley*, 563 F.2d 543, 549 (2d Cir.1977). For purposes of 8 U.S.C. § 1409(a), 8 U.S.C. § 1101(b)(1)(C) provides how a child can be legitimated. *Burgess*, 802 F.2d at 340. A child who is unmarried and under 21 years of age may be legitimated:

> [U]nder the law of the child's residence or domicile, *or under the law of the father's residence or domicile,* whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1)(C) (emphasis added). Once a child is determined to be legitimate under 8 U.S.C. § 1101(b)(1), it can then be inferred that the child is also legitimate under 8 U.S.C. § 1409(a)(4)(A). Therefore, because states have the power to determine what constitutes legitimacy, a person who is legitimated under one state does not then become illegitimate for purposes of § 1409(a)(4)(A) if the child moves to a different state that does not recognize the former state's definition of legitimacy. *See Lau v. Kiley*, 563 F.2d 543 (2d Cir. 1977)[3].

It is undisputed that plaintiff Conlin is a resident of Arizona. (Joint Statement at 2.) The state law of Arizona provides that "[e]very child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock." A.R.S. § 8–601. Thus, the Arizona statute makes all children the legitimate children of their natural parents, basing "legitimacy" solely on the biological relationship of parents and child. *Lau*, 563 F.2d at 549. Since plaintiff O'Donovan–Conlin is undisputedly the son of Heather O'Donovan and Conlin, and because Conlin is a resident of Arizona, O'Donovan–Conlin has been legitimated under the state law of Arizona.

Furthermore, Heather O'Donovan and Conlin were married in Arizona in 1991. (Joint Statement at 2.) Although their marriage lasted approximately three months, during that time period, O'Donovan–Conlin lived with both his parents in the same house. (*See* Plaintiffs' Response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Response") at 3.) Thus, under 8 U.S.C. § 1101(b)(1)(C), O'Donovan–Conlin was in the legal custody of the legitimating parent (his father) while he was under the age of 18. Therefore, plaintiff O'Donovan–Conlin has met the requirement under § 1101(b)(1)(C) and has been legitimated under the law of Arizona, his father's residence.

The United States contends that plaintiffs do not satisfy 8 U.S.C. § 1409(a)(4)(A) because the relevant state law is California. (Defendants' Motion for Summary Judgment ("Defendants' Motion") at 7.) However, this argument ignores the clear language of 8 U.S.C. § 1101(b)(1)(C),

---

**3.** In *Lau v. Kiley,* the plaintiff was born in China, which had a statute that provided "[c]hildren born out of wedlock shall enjoy the same rights as children born in lawful wedlock." 563 F.2d at 551. The *Lau* court

concluded that the plaintiff had been legitimated under the laws of China, and would be considered a "legitimate child" for purposes of 8 U.S.C. § 1101(b)(1). *Id.* at 551.

which provides that a person can be legitimated under "the law of the child's residence or domicile, *or under the law of the father's residence or domicile." Id.* (emphasis added.) The government at oral argument contended that § 1101(b)(1)(C) is not to be considered in conjunction with § 1409(a)(4), and that the more specific statute, § 1409(a)(4)(A), prevails in a legitimation analysis. However, the government fails to acknowledge *Burgess,* which specifically states that:

> [T]he plain language of the statute, 8 U.S.C. § 1101(b)(1)(C), which provides that a child, *for purposes of 8 U.S.C. § 1409(a),* can be legitimated under 'the law of the child's residence or domicile, or under the law of the father's residence or domicile.'

*Burgess,* 802 F.2d at 340 (emphasis added). Therefore, O'Donovan–Conlin can be legitimated under either the law of California (where he is a resident) or the law of Arizona (his father's residence). Since plaintiff O'Donovan–Conlin meets the criteria of legitimation under Arizona law, the Court does not have to consider whether or not he meets the requirements of California legitimation.[4]

### B. *Plaintiffs Have Not Complied With § 1409(a)(3)*

 Although plaintiffs have overcome the other hurdles presented by § 1409(a),

they have not satisfied § 1409(a)(3), and they must fulfill every requirement of the statute before O'Donovan–Conlin can be granted citizenship. *See Nguyen,* 533 U.S. at 60, 121 S.Ct. 2053. It is undisputed that plaintiff Conlin did not agree in writing to provide financial support for O'Donovon–Conlin. (Joint Statement at 2.) Although Conlin did provide checks to Heather O'Donovan for child support from a trust fund created by Conlin's parents, none of the checks specified that they were for child support. (*See* Exhibit C, Plaintiffs' Motion for Summary Judgment.) Furthermore, the checks were not written by Conlin himself, but were instead written by Anne Conlin, who is O'Donovan–Conlin's step-grandmother. (*See* Defendants' Motion at 2.) Because there is no written statement expressing a promise by Conlin to support O'Donovan–Conlin until the age of 18—a clear, unambiguous requirement of 8 U.S.C. § 1409(a)(3)—plaintiffs' claims cannot prevail.

An individual seeking citizenship under 8 U.S.C. § 1409(a) must meet *all of its preconditions. Nguyen,* 533 U.S. at 60, 121 S.Ct. 2053 (emphasis added). Although there is no case law directly interpreting § 1409(a)(3), the statute plainly requires a U.S. citizen father to put in writing that he will support his illegitimate child until the age of 18.[5] As in *Nguyen,*

---

**4.** However, even if the government were correct that the person must be legitimated under the law of the person's residence, the language of the statute does not limit the time for determining whether the person has satisfied the residence requirement to the filing of the application, as argued by the government. Section 1409(a)(4) indicates that "while the person is under the age of 18 years," the requisites of the statute must be met. The statute is silent on when these requirements must be met, save and except, prior to the person's 18th birthday. Thus, even if legitimation had to be under the laws of the person's residence (and not his father's), O'Dono-

van–Conlin lived in Arizona while his parents were married and Arizona law legitimates him.

**5.** In *Miller v. Albright,* the court declined to comment on the validity of the 8 U.S.C. § 1409(a)(3). 523 U.S. at 432, 118 S.Ct. 1428. The court stated that it was "unclear whether the requirement even applies in petitioner's case: it was added in 1986, after her birth," and she also fell into a narrow category of people who could elect to apply the pre-1986 version of § 1409(a). *Id.* Similarly, the plaintiff in *Nguyen* fell into the same category and the court did not discuss § 1409(a)(3). *Nguyen,* 533 U.S. at 60, 121 S.Ct. 2053. This

"the unfortunate, even tragic, circumstance is that [the plaintiff] did not pursue, or perhaps, did not know of these simple steps and alternatives. *Any omission,* however, does not nullify the statutory scheme." *Id.* at 71, 121 S.Ct. 2053 (emphasis added).

Similarly, in *Ablang,* the Ninth Circuit Court of Appeals stated that although it was undisputed that the plaintiff's father was a U.S. citizen who was eligible to transmit his citizenship to her at birth, the plaintiff in that case "missed the point" and was not granted citizenship.[6] *Ablang,* 52 F.3d at 805. "[T]he peculiarities of her case are not decisive. Rather, there must be some discernible rational basis for the legislature's decision to distinguish the class to which she belongs." *Id.*

Plaintiffs' position is that the Court should find that the record of support here satisfies Congress' intent in enacting § 1409(a)(3). However, the Court does not have to reach the question of Congress' intent when the statute is clear on its face. Additionally, plaintiffs assert that they have substantially complied with the statute and have not violated the spirit of the law. However, the Court is constrained from reading such requirements into a clear and unambiguous statute, and plaintiffs have failed to establish any legal support for their position. Finally, courts have a limited scope of inquiry into immigration legislation, and it has been emphasized that "over no conceivable subject is

the legislative power of Congress more complete than it is over" the admission of aliens. *Fiallo v. Bell,* 430 U.S. at 792, 97 S.Ct. 1473 (quoting *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)).

1. *Plaintiffs Argue They Have "Substantially Complied" With § 1409(a)*

■ Plaintiffs claim they have substantially complied with the provisions of § 1409(a)(3). Plaintiffs cite *Mashi v. Immigration & Naturalization Service,* 585 F.2d 1309 (5th Cir.1978), as evidence that a substantial compliance exception to immigration statutes has been created. (*See* Plaintiffs' Response at 7.) *Mashi* created a substantial compliance exception in the deportation field for alien nonimmigrant students. 585 F.2d at 1317. However, the case is distinguishable because deporting a nonimmigrant student back to his home country for taking ten units instead of twelve does not compare to granting an alien the full benefits and protection of being a U.S. citizen, when he has not complied with the provisions of the statute. Furthermore, it is not burdensome to require a person to promise in writing to support their child, especially if they are providing financial support in the absence of such a written promise, as Conlin claims to have done. Although it is unfortunate that plaintiffs did not fully comply with the statute, there is no recognized substantial

---

special category provides that a person who "is at least 15 years of age, but under 18 years of age, as of the date of the enactment of this Act, may elect to have the old section 309(a)..." 8 U.S.C. § 1409 (application of Act Nov. 14, 1986 amendment). The old version of the statute does not have a parallel to § 1409(a)(3).

In the case at hand, plaintiff does not fit into the special category, and § 1409(a)(3) is the lynchpin of this case. Therefore, this provision of the statute must be addressed in

order to determine whether or not to grant summary judgment in favor of either party.

**6.** The court in *Ablang v. Reno* concluded that the plaintiff, an illegitimate child of a Filipino mother and a U.S. citizen father, must meet the statutory requirements in order to attain citizenship. Thus, § 205 of the Nationality Act of 1940 (the predecessor to 8 U.S.C. § 1409(a)) did not violate the constitution and the statute passed muster under the rational basis test.

compliance exception that plaintiffs can rely on, and the statute is clear on its face.

Plaintiffs also claim that because Conlin provided child support while O'Donovan–Conlin was under 18 years old, the need for Conlin to put his obligation in writing is "obviated." (Plaintiffs' Motion at 6.) However, there is no precedent supporting plaintiffs' position that providing some support makes the writing requirement unnecessary. Although O'Donovan–Conlin claims he was never a financial burden on the United States, there is no evidence that Conlin actually supported O'Donovan–Conlin under the meaning of the statute, apart from the 25 checks, nor is there evidence that O'Donovan–Conlin really *wasn't* a financial burden and never received government assistance.

Furthermore, although plaintiff Conlin did provide some support, the checks sent to Heather O'Donovan were never written by Conlin himself. Instead, they were written out of a trust fund by Anne Conlin, and they total only 25 checks for $200 each. (Joint Statement at 2.) Furthermore, the checks were written on an irregular basis from 1993 to 1997, and not a single check was written in 1994. (Joint Statement at 2.) The total amount of these checks is only $5,000, and the Court is disinclined to consider $5,000 to be adequate "support for the person until the person reaches the age of 18 years." *See* 8 U.S.C. § 1409(a)(3).

### 2. *Plaintiffs Argue Under "Spirit of the Statute"*

■ Plaintiffs argue that Conlin has complied with the spirit of the statute and that O'Donovan–Conlin should not be prevented from attaining U.S. citizenship because of an oversight of Conlin. (Plaintiffs' Motion at 7.) Plaintiffs have met the legitimation requirement of § 1409(a)(4)(A), as well as the other requirements under § 1409(a), so the only thing preventing O'Donovan–Conlin from attaining citizenship is a written statement promising financial support by Conlin while O'Donovan–Conlin was under 18 years old. Although plaintiffs do not cite case law supporting their "spirit of the statute" argument, precedent reveals that a fundamental rule of statutory construction is that a court should ascertain legislative intent so as to effect the purpose of the law. *Select Base Materials, Inc. v. Board of Equalization*, 51 Cal.2d 640, 645, 335 P.2d 672 (1959). Such purpose of the law will not be sacrificed to a literal construction of any part of the statute or act. *Id.* Furthermore, statutes should be read in conjunction with legislative intent, and be liberally construed in order to give effect to such intent. *Ex parte Haines*, 195 Cal. 605, 612–613, 234 P. 883 (1925).

■ However, when a statute is plain and unambiguous on its face, it is inappropriate for courts to refer to legislative history as a guide to the statute's meaning. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184–85 n. 29, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), (citing *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 959, 93 L.Ed. 1207 (1949) and cases cited therein)[7]; *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 1234, 152 L.Ed.2d 258 (2002). 8 U.S.C. § 1409(a)(3) is clear on its face and is devoid of ambiguity. The statute mandates that fathers of children born out of wedlock outside of the United States agree "in writing to provide financial support for the person until the person reaches the age of 18 years." 8 U.S.C. § 1409(a)(3). Therefore, although plaintiff O'Donovan–

---

**7.** In *TVA v. Hill*, the Supreme Court stated that it was not necessary to look beyond the words of the statute, but the Court did so in order to address Justice Powell's suggestion that "an absurd" result was reached in that case. 437 U.S. at 184–85, 98 S.Ct. 2279.

Conlin contends that he complied "in spirit" with the statute and is in compliance with statutory intent, the statute clearly requires that plaintiff Conlin had to agree *in writing* to support plaintiff O'Donovan-Conlin until the age of 18. Because § 1409(a)(3) is unambiguous, it is unnecessary to turn to legislative intent, and plaintiff undisputedly fails to satisfy this portion of the statute.

■ Although some case law supports the notion that legislative intent should be considered in order to effect the purpose of the law, the Supreme Court has explained that looking to legislative intent when a statute is clear on its face applies only in "rare and exceptional circumstances." *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930). The absurdity of following the letter of the law must be "so gross as to shock the general moral or common sense." *Id.* Furthermore, there must be something to indicate that the intent of Congress is that the letter of the statute is *not* to prevail in a particular case. *Id.* (emphasis added). Turning to the case at hand, § 1409(a) is clear on its face and there is no indication that following the statute would produce a result that would be absurd or "shock the general moral or common sense." *See id.*

While plaintiffs have met three out of four requirements for citizenship under § 1409(a), they must comply with all the section's provisions, and plaintiff Conlin has failed to provide a written statement indicating he would support O'Donovan-Conlin until 18 years of age. The statute is unambiguous and clearly states that the U.S. citizen father must have made such a written promise of support. Because plaintiffs concede that they did not comply with the provision of the statute, their claim fails and summary judgment should be awarded to defendants.

## CONCLUSION

Plaintiffs' equal protection claims fail as a matter of law due to case law directly on point. Furthermore, plaintiffs have not met the statutory requirements of 8 U.S.C. § 1409(a). Although plaintiff O'Donovan-Conlin has been legitimated under Arizona state law, plaintiff Conlin has failed to comply with the statute in its entirety because he did not make a written statement promising to support O'Donovan-Conlin until the age of 18. Therefore, the Court DENIES plaintiffs' Motion for Summary Judgment and GRANTS defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**