Luzvisaminda ABLANG,
Plaintiff–Appellee,

v.

Janet RENO,* Attorney General, et al., Defendants–Appellants.

No. 93–56129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1995.

Decided April 14, 1995.

* Janet Reno is substituted for her predecessor William P. Barr, Attorney General of the United States, pursuant to Fed.R.App.P. 43(c)(1).

John S. Koppel, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Charles M. Miller, The Miller Law Offices, Studio City, CA, for plaintiff-appellee.

Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## I

United States Attorney General Janet Reno and Secretary of State Warren Christopher appeal the district court's award of summary judgment to Luzvisaminda Ablang in her action challenging the constitutionality of section 205 of the Nationality Act of 1940, 54 Stat. 1137, and seeking a declaratory judgment that she is a United States citizen. We reverse the district court's decision and remand.

## II

### FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. Luzvisaminda Ablang was born out of wedlock in the Philippines on June 8, 1946, to a Filipino mother and a United States citizen father stationed in the Philippines during World War II.[1] Her father, Walter Simmerson, left the Philippines before she was born. Lacking resources, Ablang's mother gave her shortly after birth to another family, which raised but never legally adopted her. Ablang was unaware of her true parentage until her natural mother came to see her some time after her graduation from high school. Her mother informed her that her father was a United States citizen, whom she believed to be deceased. In 1981, Ablang nonetheless wrote to her father at an old address provided by her mother. He responded, and they met for the first time in 1987.

In 1990, Ablang applied for a Certificate of Citizenship from the INS, and in 1991 for a United States passport. She submitted affidavits from her father acknowledging his paternity, as well as the results of genetic testing showing her to be Simmerson's daughter by a 95.77% probability. Both of her applications were denied. The Government does not dispute that Ablang is Simmerson's daughter. It acknowledges that Simmerson "fits the parental requirement." It bases its denial of her request to be recognized as a United States citizen on her failure to have been legitimated or to have had her paternity adjudicated by the age of majority, as required by section 205 of the Nationality Act of 1940.

After her applications were denied, Ablang filed a complaint with the district court seeking a declaratory judgment of her United States citizenship. The district court found

---

1. The Philippines were an outlying possession of the United States until July 4, 1946. We note we have held that birth in the Philippines during the territorial period does not constitute birth in the United States under the Citizenship Clause of the Fourteenth Amendment. *Rabang v. INS*, 35 F.3d 1449, 1452 (9th Cir.1994). Ablang does not, however, base her claim to United States citizenship solely upon birth in a United States territory.

section 205 to be unconstitutional as a violation of the equal protection clause, and awarded summary judgment to Ablang, declaring her to be a United States citizen. The Government timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III

## DISCUSSION

### A. Standard of Review

A grant of summary judgment is reviewed *de novo.* *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Review of a decision to grant or deny declaratory relief is *de novo.* *Tashima v. Administrative Office of the United States Courts,* 967 F.2d 1264, 1273 (9th Cir.1992). " 'Although the decision to grant or deny declaratory relief ... is a matter initially committed to the discretion of the district court, on appeal we exercise our own "sound discretion" to determine the propriety of the district court's grant or denial of declaratory relief.' " *Dexter v. Kirschner,* 984 F.2d 979, 982 (9th Cir.1993) (quoting *Fireman's Fund Ins. Co. v. Ignacio,* 860 F.2d 353, 354 (9th Cir.1988)).

### B. Analysis

"The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." *Runnett v. Shultz,* 901 F.2d 782, 783 (9th Cir.1990). The statutes applicable here are sections 201(e) and 205 of the Nationality Act of 1940 ("the Act").[2] Section 201(e) confers citizenship on:

> [a] person born in an outlying possession of the United States of parents one of whom is a citizen of the United States who resided in the United States or one of its outlying possessions prior to the birth of such person.

Section 205 provides as to illegitimate children:

The provisions of section 201, [subsection] ... (e) ... hereof apply, as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court.

> In the absence of such legitimation or adjudication, the child ... if the mother had the nationality of the United States at the time of the child's birth, and had previously resided in the United States or one of its outlying possessions, shall be held to have acquired at birth her nationality status.

The Act thus requires that a child born abroad and out of wedlock to a United States citizen father and an alien mother establish paternity by the age of majority in order to be deemed a United States citizen. A child born abroad and out of wedlock to a United States citizen mother and alien father is deemed a United States citizen provided the mother has met the residency requirement; nothing further is required of the child.

In its order of April 28, 1993, the district court found section 205 to be violative of the Equal Protection Clause because it "takes away" the citizenship granted in section 201 on an unjustifiably discriminatory basis. In other words, Ablang argues, section 205 imposes a "condition subsequent" to retention of the United States citizenship previously granted her by section 201. We do not agree. Even if section 205 could be read as implying a condition subsequent, it is established that Congress may impose such conditions. *Rogers v. Bellei,* 401 U.S. 815, 831, 834, 91 S.Ct. 1060, 1069, 1070, 28 L.Ed.2d 499 (1971).

But we do not read section 205 as revoking a previous grant of citizenship. We agree with the Government that citizenship does not inhere under the Act unless and until paternity is established, provided this takes place by the age of majority. The question before us is whether the Act unlawfully discriminates between: 1) classes of children born abroad to an alien and a Unit-

---

**2.** The Nationality Act of 1940 was repealed in 1952, by statutes which have themselves since been repealed. The contemporary equivalents of

§ 201(e) and § 205 of the Act are to be found in 8 U.S.C. § 1401(e) and § 1409.

ed States citizen parent, on the basis of legitimacy; or 2) classes of illegitimate children, born abroad to an alien and a United States citizen parent, on the basis of the United States citizen parent's gender.

■ In *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), the Supreme Court upheld the constitutionality of 8 U.S.C. § 1101(b)(1)(D), a statute which excluded natural fathers and their illegitimate children from the special preference immigration status granted by the Immigration and Nationality Act to aliens who qualify as the children or parents of United States citizens or lawful permanent residents. The Court observed that judicial inquiry into immigration legislation is limited in deference to the "long recognized" power of the political branches of the Government to "expel or exclude aliens." *Id.* at 792, 97 S.Ct. at 1477; *see also United States v. Wong Kim Ark*, 169 U.S. 649, 702–03, 18 S.Ct. 456, 477–78, 42 L.Ed. 890 (1897) (holding that the legislative power to prescribe a uniform rule of naturalization reaches to the bestowal of United States citizenship upon foreigners and upon foreign-born children of United States citizens alike). While *Fiallo* requires the courts to limit the scope of review of immigration laws in deference to Congress, it does not preclude review. "The Court's position has always been that cases alleging constitutional infirmities in the immigration laws are subject to judicial review." *Ventura–Escamilla v. INS*, 647 F.2d 28, 31 (9th Cir.1981).

■ While " 'Congress regularly makes rules that would be unacceptable if applied to citizens,' " *Fiallo*, 430 U.S. at 792, 97 S.Ct. at 1478 (quoting *Mathews v. Diaz*, 426 U.S. 67, 80, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976)), it must nevertheless have a "facially legitimate and bona fide reason" for enacting a discriminatory rule. *Fiallo*, 430 U.S. at

792–94, 97 S.Ct. at 1477–79. We have held, and here affirm, that the "facially legitimate and bona fide reason" test is equivalent to the rational basis test typically applied in equal protection cases. *Wauchope v. United States Dept. of State*, 985 F.2d 1407, 1414 n. 3 (9th Cir.1993).

Applying the facially legitimate and bona fide reason test, the *Fiallo* Court concluded that, "Congress obviously has determined that preferential status is not warranted for illegitimate children and their natural fathers, perhaps because of a perceived absence in most cases of close family ties as well as a concern with the serious problems of proof that usually lurk in paternity determinations," and held the statute to be "not unconstitutional." *Id.*, 430 U.S. at 799, 97 S.Ct. at 1481.[3]

In *Wauchope*, we held that section 1993 of the Revised Statutes of 1874, which awarded United States citizenship to the foreign-born offspring of United States citizen fathers, but not to the foreign-born offspring of United States citizen mothers, was unconstitutional. 985 F.2d at 1416. Whereas *Fiallo* concerned the right of aliens to equal protection under the special preference immigration laws, *Wauchope* concerned the right of United States citizen mothers to transmit citizenship to their children born abroad according to the same standards set for United States citizen fathers.[4] The Government's explanation for the disparity in treatment between men and women involved the United States' efforts to discourage dual citizenship. The argument was that foreign countries were less apt to confer citizenship on the children of United States citizen fathers than those of United States citizen mothers, so allowing mothers to pass on their United States citizenship was more likely to result in dual citizenship. *Id.* at 1415. Inasmuch as a

---

**3.** Congress has since rewritten 8 U.S.C. § 1101(b)(1)(D) in terms that equalize the relationship between natural mothers and fathers and their children.

**4.** *Wauchope* was brought by children born abroad on behalf of their United States citizen mothers. The children were deemed to have standing to proceed on behalf of their mothers under *Powers v. Ohio*, 499 U.S. 400, 409–12, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991),

because: 1) they had suffered an injury-in-fact, 2) they were closely related to the parties on whose behalf the action was brought, and 3) their mothers were deceased, and thus no longer able to press their own claims. *Wauchope*, 985 F.2d at 1411. In the case before us, Ablang has standing only to proceed on her own behalf, as her father is still alive. Her standing as such is not disputed.

significant majority of countries confer citizenship in a gender-neutral fashion on persons born upon their soil, we deemed this argument "simply incorrect," and held that the Government had "failed to set forth a facially legitimate and bona fide reason to justify the statute's unequal treatment of citizen men and women." *Id.* at 1416.

We now turn to the case before us to determine whether the government has proposed a rational basis for the statute here in question. There are two prongs to the condition imposed upon illegitimate children by section 205 of the Act: proof of paternity, and the time limit for legitimation. In reviewing the two prongs, two questions must be considered: 1) is there a rational basis for the distinction between legitimate and illegitimate children? and 2) is there a rational basis for the distinction between illegitimate children born to United States citizen mothers and those born to United States citizen fathers?

Ablang argues that there is no rational basis for the paternity requirement because in *her* case there is no unresolved question of paternity: the Government concedes that she is the daughter of Walter Simmerson, a United States citizen who was eligible to transmit his citizenship to Ablang at birth. Ablang misses the point; the peculiarities of her case are not decisive. Rather, there must be some discernible rational basis for the legislature's decision to distinguish the class to which she belongs.

The Congress need not have stated its rationale for the distinction in the text or legislative history. "Where a statute is assessed pursuant to a deferential standard of review, 'it is constitutionally irrelevant whether the justification proffered by the government was in fact the reasoning that generated the legislative classification.'" *Id.* at 1415 (quoting *United States v. Barajas-Guillen,* 632 F.2d 749, 754 (9th Cir.1980)). "However, courts 'need not in equal protection cases accept at face value assertions of legislative purposes, when ... the asserted purpose could not have been a goal of the legislation.'" *Id.* (quoting *Weinberger v. Wiesenfeld,* 420 U.S. 636, 648 n. 16, 95 S.Ct. 1225, 1233 n. 16, 43 L.Ed.2d 514 (1975)).

We conclude there is a rational basis for the statute's requirement of proof of paternity. Clearly, an illegitimate child cannot claim citizenship via *jus sanguinis* until her parentage is established. In the case of legitimate children, most states make a presumption of paternity (rebuttable or otherwise) that determines the husband to be the child's legal father. When children are born out of wedlock, there is no such presumption, and the Government naturally requires proof of paternity before determining someone to be the legal father. While in Ablang's case, her connection to both her mother and her father was broken early in infancy, in most cases there is a reasonable expectation that the illegitimate child's maternal descent will be easier to trace than her paternal descent. The birth certificate (destroyed in Ablang's case by white ants, according to records officials) as a rule lists the name of the birth mother.

As for the time limitation, the Government observes that proof may be harder to obtain as the years go by, and suggests that Congress has an interest in promoting "close family ties." The Government cites the following notes from *Fiallo* in support of its conclusions:

> The inherent difficulty of determining the paternity of an illegitimate child is compounded when it depends upon events that may have occurred in foreign countries many years earlier.

430 U.S. at 799 n. 8, 97 S.Ct. at 1482 n. 8.

> Appellants insist that the statutory distinction is based on an overbroad and outdated stereotype concerning the relationship of unwed fathers and their illegitimate children, and that existing administrative procedures, which had been developed to deal with the problems of proving paternity, maternity and legitimation with respect to statutorily recognized "parents" and "children," could easily handle the problems of proof involved in determining the paternity of an illegitimate child. We simply note that this argument should be addressed to the Congress rather than the courts.

*Id.* at 799 n. 9, 97 S.Ct. at 1482 n. 9.

While we are aware of the increasing use and reliability of blood and genetic testing to

establish paternity, we hold that the Government has put forth facially bona fide and legitimate reasons for the time limitation of section 205 of the Act. We acknowledge that the burden placed on the illegitimate child of a United States citizen father in requiring her to establish paternity while still a child is a heavy one. But we cannot say that Congress's desire to promote early ties to this country and to those relatives who are citizens of this country is not a rational basis for the requirements made by section 205 of the Act. Thus, we hold that the statutory sections in question are not unconstitutional.

For the foregoing reasons, the decision of the district court is

REVERSED and the case is REMANDED with instructions to dismiss the complaint with prejudice.