124 F.3d 213
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richardi AHUMADA-AGUILAR, aka Ricardo Ahumada; aka Ricardo
Aguilar; aka Ricardo Alfonso Hernandez,
Defendant-Appellant.
 No. 96-30065.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1996.
Decided Sept. 19, 1997.
 
 Appeal from the United States District Court for the Western District of Washington, No. CR-95-00339-1-TSZ; Thomas S. Zilly, District Judge, Presiding.
 Before: ALARCN, NORRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We are required to reject appellant's equal protection argument, because Ablang v. Reno, 52 F.3d 801, 804 (9th Cir.1995) controls. Because Congress has plenary authority to prescribe rules for the admission and exclusion of aliens, the scope of judicial inquiry is especially limited, even more than in the usual equal protection case, by the "facially legitimate and bona fide reason" standard. Wauchope v. Dep't of State, 985 F.2d 1407, 1413 (9th Cir.1993). It would be inappropriate to distinguish Ablang, because one of the reasons mentioned in Fiallo v. Bell, 430 U.S. 787, 798-99 (1977), "perceived absence in most cases of close family ties," applies even where paternity is established, as does the reason we mentioned in Ablanq, "a desire to promote early ties to this country and to those relatives who are citizens of this country," 52 F.3d at 806.
 
 
 3
 Appellant has not established the elements for an equitable estoppel, because he has not shown "affirmative misconduct going beyond mere negligence." Watkins v. United States Army, 875 F.2d 699, 707 (9th Cir.1989) (en banc). Negligent loss of photographs does not amount to affirmative misconduct in the circumstances of this case.
 
 
 4
 Appellant has not established unconstitutionality of his initial deportation. He had been given a form explaining that he could be represented by an attorney or other authorized individual, and would be given a list of attorneys and others available to represent aliens, some for free or for a nominal fee. He was fully advised of all that he was entitled to be advised of by 8 C.F.R. § 242.16(a). The form he received was in Spanish and English. Appellant said that it did not matter to him whether the proceeding were in Spanish or English, indicating that he understood both.
 
 
 5
 The regulation regarding right to counsel says that the immigration judge must require the alien "to state then and there whether he desires representation." 8 C.F.R. § 242.16(a). The immigration judge said to the several persons before him, "if you want to proceed right now and speak for yourselves, proceed with your case now, I want you to stand up and raise your right hand." This sufficed to require appellant to "state then and there whether he desires representation." The statement would be made by physical movement, standing up and raising his hand if he did not want representation, and sitting and doing nothing if he did. The affirmative act of standing and raising one's hand suffices to distinguish one statement from the other with clarity. Individuals voting in legislative bodies sometimes state their vote by raising of hands or standing up. The physical movement is a plain and express statement. By standing up and raising his hand, appellant plainly demonstrated his intent to waive counsel. Appellant, in his individual colloquy with the immigration judge, said "I just want to get it over with." That is consistent with his waiver of counsel and explains it.
 
 
 6
 The district judge did not err in his ruling that no instruction on citizenship should be given. The defense conceded that it had no evidence to show that appellant satisfied 8 U.S.C. § 1409(a)(3) and (4). Appellant was indicted under 8 U.S.C. § 1326(a) and (b)(1), so this issue turns on which side had the burden of proof with respect to those elements of § 1409. Of course the government had the burden of proving all elements of the crime beyond a reasonable doubt. But the elements of the legitimation statute, § 1409, are not the same as the elements of the reentry of removed alien statute, § 1326. In view of defendant's conceded inability to establish legitimation, the trial judge was within his discretion in excluding evidence of some but not all the elements of legitimation and not instructing on legitimation.
 
 
 7
 AFFIRMED.
 
 Norris, J., dissenting:
 
 8
 Appellant was born in Mexico to a Mexican citizen mother and an estranged United States citizen father, who never legitimated him. He and his mother came to the United States in 1976, when he was four years old, and they obtained legal residency in 1985. Ahumada-Aguilar lived in the United States continuously until 1991, when he was deported based on a conviction for possession of cocaine at the age of 18. After that deportation, he has returned to the United States and has now been convicted for illegal reentry as a felon.
 
 
 9
 In this appeal from that conviction, appellant argues principally that his father's United States citizenship should have qualified him for derivative citizenship as well. Alternatively, he argues that 8 U.S.C. § 1409(a) and (c), which govern his potential for nationalization, violate the Equal Protection clause by discriminating on the basis of legitimacy status at birth and on the basis of sex. In addition, appellant argues that the district court erred when it rejected his equitable estoppel argument and when it refused to allow him to argue his derivative citizenship claim to a jury without supporting evidence. Finally, he collaterally attacks his original deportation hearing on due process grounds.
 
 
 10
 I dissent because I agree with appellant that his underlying deportation hearing violated due process.
 
 
 11
 First, appellant complains that he was denied due process because the IJ did not obtain a knowing, voluntary, and intelligent waiver of his statutory right to counsel, pursuant to 8 U.S.C. § 1362. I agree. There is no reason to believe the waiver was intelligent. Although the IJ informed appellant that he could be represented by counsel at the deportation hearing, the IJ did not explain to him why counsel might be desirable or even that immigration law is complicated.[1] Our court has recognized that "[a] lawyer is often the only person who could thread the labyrinth" of deportation law, and that "[w]ith only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' " Castro-O'Ryan v. Dep't of Immigration & Naturalization, 847 F.2d 1307, 1312 (9th Cir.1988) (quoting E. Hull, Without Justice for All 107 (1985)). Given this complexity of immigration law, the IJ should at least have explained the dangers of self-representation. Absent such an explanation, only the most extraordinary alien would know what it means to decline assistance from counsel trained in the intricacies of the relevant law.[2] I believe, therefore, that appellant did not validly waive his right to counsel because the IJ failed to advise him of the dangers of self-representation.
 
 
 12
 In addition, appellant argues that the IJ did not elicit a valid waiver of his right to appeal the deportation decision. Again, I agree. At the close of the deportation hearing, the IJ told appellant that he could appeal the deportation decision or accept it as final; appellant accepted the decision as final. He was not given the option to reserve the decision whether to appeal. CR at 150-51. I would hold that the procedure at issue here did not elicit a valid waiver of appellant's right to appeal the deportation decision.
 
 
 13
 I next consider the issue of prejudice, which is not seriously in dispute here[3]. Denial of counsel alone prejudices a defendant if counsel could have presented the defendant's case in a more advantageous manner. Colindres-Aguilar v. INS, 819 F.2d 259, 262 (9th Cir.1987). The United States conceded at trial that an attorney could in fact have presented Ahumada-Aguilar's case more advantageously: "if [Ahumada-Aguilar] would have had a lawyer, they unquestionably would have been able to keep this issue alive long enough to get it into the back door on this [discretionary] relief and then raise whatever issues they thought they could raise." CR at 67. And the district court noted that "a competent lawyer would have raised this issue [of discretionary relief from deportation]," which would have rendered appellant's chance for obtaining relief from deportation "substantial." CR at 51, 78. These observations about what competent counsel would have done are alone sufficient to demonstrate that appellant was prejudiced by the IJ's failure to elicit a valid waiver of his right to counsel.
 
 
 14
 In addition, appellant makes the related showing that the invalid waiver of his right to appeal prejudiced him because he could have benefitted from an appeal even without counsel. The district court found, and the government conceded, that if appellant had appealed the IJ's decision to deport him, he would have become eligible for discretionary relief from deportation pursuant to 8 U.S.C. § 1182(c).[4] CR at 67, 78.See United States v. Jimenez-Marmolejo, 104 F.3d 1083, 1085 (9th Cir.1996) (aliens continue to accrue time toward statutory minimum residence requirement during pendency of appeal of deportation decision even if aliens concede deportability). At least three positive factors would have supported appellant's application for discretionary relief pursuant to § 1182(c): (1) it is not disputed that his father was a United States citizen; (2) it is not disputed that appellant lived in the United States from when he was four years old until he was deported when he was 19 years old; and (3) it is not disputed that if appellant had been born in the United States rather than in Mexico he would automatically have been a citizen. 8 U.S.C. § 1401(a) (Supp.1996). To be sure, appellant's convic tion for possession of cocaine would factor negatively into his application for discretionary relief from deportation. The conviction might have been mitigated, however, by the facts that he was a teenager when he was convicted and that he was convicted for possession but not for selling drugs.
 
 
 15
 In any event, in order to establish prejudice, appellant need not prove that he would have obtained relief from deportation. Instead, appellant need prove only that there were plausible grounds for relief. Jimenez-Marmolejo, 104 F.3d at 1086. He has made that showing. Indeed, in district court, the government conceded on this point that he "would have a reasonably good chance, in fact, a very good chance to get the relief he needed to stay in the United States." CR at 67-68. Given this "very good chance" to obtain some relief on appeal, appellant has shown that he was prejudiced by the invalid waiver of his appeal right and by the erroneous legal advice of the IJ.[5]
 
 
 16
 Because Ahumada-Aguilar has shown that he was prejudiced by due process defects in his underlying deportation hearing, we should hold that his deportation was invalid. Accordingly, we should reverse his conviction for illegal reentry into the United States as a felon.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The entire discussion of the right to counsel was as follows: the IJ advised the four respondents at the deportation hearing that they each had the right to representation by counsel but that "[t]hose of you who want to proceed right now and speak for yourselves [should] please stand up." CR at 143. After one of the respondents asked for clarification of what the IJ meant, the IJ answered: "I have told you that if you want more time to get a lawyer I will give you more time.... But if you want to proceed right now and speak for yourselves, proceed with your case right now, I want you to stand up and raise your right hand." CR at 144. All four respondents, including appellant, stood. CR at 145
 
 
 [2]
 Contrary to the government's argument, the bare fact that appellant received assistance from an attorney in a prior criminal action would neither have apprised him of the dangers of proceeding without counsel generally nor have demonstrated for him the intricacies of immigration law
 
 
 [3]
 Although the United States conceded in the district court that appellant was prejudiced by not having an attorney at his deportation hearing, CR at 67, the United States now argues that appellant "should not be entitled to evade the requirements of 8 U.S.C. § 1182(c) by filing a frivolous appeal." Appellee's Brief at 21. But appellant's appeal would not have been frivolous. At the least, appellant could have raised in his appeal the substantial question whether he intelligently waived his right to counsel
 
 
 [4]
 8 U.S.C. § 1182(c) provides in pertinent part:
 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provision of subsection (a) [which lists classes of excludable aliens]
 Although the statute's literal language applies only to exclusion proceedings, it has been held to apply to deportation proceedings as well. Ortega de Robles v. INS, 58 F.3d 1355, 1358 (9th Cir.1995).
 
 
 [5]
 Contrary to the IJ's legal advice at the deportation hearing, discretionary relief from deportation pursuant to 8 U.S.C. § 1182(c) was appellant's sole remaining chance for legal residence in this country. By discouraging appellant from appealing the deportation decision, the IJ helped foreclose his chances to benefit from an appeal