**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hector Alonzo VIRAMONTES– ALVARADO, Defendant– Appellant.**

No. 96–10576.

United States Court of Appeals, Ninth Circuit.

Argued Oct. 9, 1997.

Submission Withdrawn Dec. 8, 1997.

Resubmitted June 9, 1998.

Decided June 24, 1998.

Jon M. Sands, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Tim Holtzen, Assistant U.S. Attorney, Phoenix, Arizona, for the plaintiff-appellee.

Before: HUG, Chief Judge, WALLACE and HALL, Circuit Judges.

HUG, Chief Judge:

On August 28, 1996, Hector Viramontes–Alvarado was convicted of illegal reentry of an alien into the United States after deportation subsequent to a felony conviction in violation of 8 U.S.C. § 1326(b)(1). He contends that he is not an alien because he is the illegitimate son of an American citizen father.

Viramontes–Alvarado appeals his conviction on several grounds: (1) the denial of derivative citizenship violates the equal protection clause; (2) the requirement that a U.S. citizen father physically bring an illegitimate child into his home violates the Due Process right to organize one's family arrangements; (3) the jury instructions given with respect to the establishment of paternity under California law were erroneous; (4) the trial court erred in denying his motion for judgment of acquittal based on insufficient evidence for the jury to conclude that he was an alien; and (5) the sentence enhancement for reentry after deportation subsequent to a conviction for an aggravated felony was incorrectly applied to him.

We have jurisdiction over the judgment pursuant to 28 U.S.C. § 1291 and the sentence pursuant to 18 U.S.C. § 3742. We affirm the conviction, but vacate the sentence as not in compliance with *United States v. Fuentes–Barahona,* 111 F.3d 651 (9th Cir. 1997) (per curiam).

I.

A United States Border Patrol agent discovered Viramontes–Alvarado at the Yuma

County Jail on December 30, 1995. Viramontes–Alvarado told the agent that he was a citizen of Mexico by birth. He described his last entry into the United States as an illegal entry. Records and testimony confirm that an immigration court ordered Viramontes–Alvarado deported from the United States on September 14, 1995, following a felony conviction pursuant to 8 U.S.C. § 1326(b)(1).

The issue at trial was whether Viramontes–Alvarado was an American citizen by his birth to an American citizen father, Benjamin "Tony" Viramontes, and therefore could not be guilty of illegal reentry. At trial Tony Viramontes testified that he had an intimate relationship with Armida Alvarado, a Mexican citizen and Appellant's mother, that the couple never married, and that Viramontes–Alvarado was his son. Armida Alvarado also testified that Viramontes–Alvarado was Tony's son.

Tony's testimony reveals that though he visited Viramontes–Alvarado and his mother in Mexico for short periods of time when Viramontes–Alvarado was an infant, Tony never lived with them in Mexico nor did Viramontes–Alvarado live with Tony in the United States while he was a minor. Furthermore, while Tony did not deny that Viramontes–Alvarado was his son to people in Mexico, he never told anyone in California.

The district court instructed the jury that in order to find that Viramontes–Alvarado derived citizenship from his father, his father must have legitimated him under California law and that this required Tony Viramontes to openly and publicly admit paternity as well as physically bring Viramontes–Alvarado into his home before his son reached the age of 22. The jury necessarily found Viramontes–Alvarado had not established derivative citizenship, in returning a verdict of guilty for illegal reentry subsequent to Viramontes–Alvarado's deportation.

The district court sentenced Viramontes–Alvarado to 84 months in custody followed by 36 months of supervised release. In determining Viramontes–Alvarado's sentence, the

district court calculated his base level in accord with that for aggravated felons. This calculation increased his base level by 16 levels.

## II.

█ " 'The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth.' " *Ablang v. Reno,* 52 F.3d 801, 803 (9th Cir.1995) (quoting *Runnett v. Shultz,* 901 F.2d 782, 783 (9th Cir.1990)). Viramontes–Alvarado was born on September 12, 1962. Therefore, we apply the statutes applicable on that date.

In 1962, 8 U.S.C. § 1401(a)(7) stated that a person shall be a national and a citizen of the United States at birth who is:

> born outside of the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

At that time, Section 1401(g) was applicable, pursuant to 8 U.S.C. § 1409(a), to children born out of wedlock to U.S. citizen fathers "if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." A child who is unmarried and less than 21 years of age can be legitimated:

> under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1)(C).[1]

█ Viramontes–Alvarado conceded that he could not satisfy the legitimation require-

---

1. There is an apparent inconsistency in the age requirements pursuant to the former 8 U.S.C. §§ 1409 and 1101(b)(1)(C). The former required paternity to be established before the child

ments of Mexico. Therefore, we evaluate whether the requirements of California, where his father resided at the time, were met.

California law regarding legitimation at the time Viramontes–Alvarado was born was Cal. Civ.Code § 230. Section 230 provided that:

> The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.

The interpretation of Cal. Civ.Code § 230 is governed by the interpretation of the California courts. *See Louie Wah You v. Nagle,* 27 F.2d 573 (9th Cir.1928). In *In re De Laveaga's Estate,* 142 Cal. 158, 169, 75 P. 790, 794 (1904), the California Supreme Court, interpreting section 230, stated that

> [t]he father of an illegitimate child in order to adopt him as a legitimate must not only publicly acknowledge him as his own, but must receive him into his family, and if he have a wife, with her consent.... [H]aving a family, or at least a home, in which he can receive him is one of the cardinal conditions prescribed for such adoption.

In light of California case law, we noted that to satisfy § 230, "the child must reside with the father." *Kaliski v. District Dir., I.N.S.,* 620 F.2d 214, 216 (9th Cir.1980).

## III.

■ Viramontes–Alvarado contends that it is an equal protection violation to require the bringing of an illegitimate child into one's home for the purpose of legitimation. The

crux of his claim is that this requirement discriminates against illegitimate children born outside of the United States to U.S. citizen fathers.[2] We disagree.

■ "[J]udicial inquiry into immigration legislation is limited in deference to the 'long recognized' power of the political branches ... to 'expel or exclude aliens.' " *Ablang,* 52 F.3d at 804 (citing *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)). In cases alleging constitutional infirmities in immigration laws, this court must determine if there is a "facially legitimate and bona fide reason" for enacting a discriminatory rule. *Ablang,* 52 F.3d at 804.

In *Fiallo,* the Supreme Court upheld an exclusion of illegitimate children and their natural fathers from special preference immigration status given to a child or parent of a U.S. citizen or lawful permanent resident under the Immigration and Nationality Act of 1952. The Court held that "Congress obviously has determined that preferential status is not warranted for illegitimate children and their natural fathers, perhaps because of a perceived absence in most cases of close family ties as well as a concern with the serious problems of proof that usually lurk in paternity determinations." *Fiallo,* 430 U.S. at 799, 97 S.Ct. 1473. This analysis applies equally to the case at hand. The requirements for establishing legitimacy as a prerequisite to a finding of derivative citizenship based on the citizenship of the child's father is rationally related to the legitimate interest of regulating the conferral of derivative citizenship.

■ Viramontes–Alvarado also claims that the requirement that he physically reside with his father in order to be legitimized violates substantive due process. The Su-

---

turned 21 and the latter required legitimation before the child turned 18. This inconsistency has been remedied in subsequent amendments to § 1409 which establish that paternity must be established before the child turns 18.

The district court's instruction, requiring paternity to be established before Viramontes–Alvarado turned 22, seems to have given Viramontes–Alvarado the broadest interpretation of the two applicable statutes (that paternity be established before the child turns 21) and added a year.

2. In his reply brief Viramontes–Alvarado also claims that this requirement treats U.S. fathers differently from U.S. mothers. However, since this matter was not specifically and distinctly argued in his opening brief we need not consider it. *See Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 738 (9th Cir.1986).

Nevertheless, this argument has been rejected by the Supreme Court in *Miller v. Albright,* —— U.S. ——, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998).

preme Court in *Moore v. City of E. Cleveland, Ohio,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), recognized that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 499, 97 S.Ct. 1932 (quoting *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974)). However, the requirement that an illegitimate child born outside of the United States reside with his citizen father in order to obtain derivative citizenship does not implicate this liberty interest.

■ We also reject Viramontes–Alvarado's claim that the trial court erred in failing to instruct the jury that temporarily living with the child satisfies the requirement that a father receive a child into his home in order to establish paternity. We review a district court's formulation of jury instructions for an abuse of discretion. *United States v. de Cruz,* 82 F.3d 856, 864 (9th Cir.1996). "Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion." *Id.*

The relevant portion of the jury instructions stated:

> The applicable law for legitimation in this case is the law of California. That law, as it applies to this case, provides that legitimation must be made by a father by receiving the child into his home and openly holding out the child as his natural child. This provision requires that the unmarried biological father must not only openly and publicly admit paternity, but must also physically bring the child into his home.

■ The California Supreme Court has rejected the notion that a man could "constructively" receive a child into his home. *Adoption of Kelsey S.,* 1 Cal.4th 816, 4 Cal. Rptr.2d 615, 621, 823 P.2d 1216, 1222–23 (1992)(In Bank). Similarly, a California Court of Appeal, interpreting Cal. Fam.Code § 7611,[3] specifically held that living with the child's mother and the child in their home did

not satisfy the requirements of establishing legitimacy where the totality of the circumstances failed to establish a "consistent commitment to assume the burdens of parenthood." *In re Spencer W.,* 48 Cal.App.4th 1647, 56 Cal.Rptr.2d 524, 527 (1996). In this case, Tony Viramontes did not bring Viramontes–Alvarado to his home in California nor did he live with the child and mother in Mexico. Tony's contact was limited to visits during Viramontes–Alvarado's infancy.

We believe the elements of establishing paternity were adequately presented to the jury. The failure to instruct the jury that the residency requirement can be satisfied by short visits to the mother and child is not required by the statute and has been expressly rejected by California courts.

■ Viramontes–Alvarado's claim that the trial court erred in denying his motion for judgment of acquittal based on the inability of the jury to find an element of the offense—that Viramontes–Alvarado was an alien—is also without merit. We review the evidence presented in the light most favorable to the government to determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir.1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The government presented sufficient evidence for the jury to conclude that the allegations of legitimation presented by Viramontes–Alvarado simply did not satisfy California's legitimation statute.

## IV.

Viramontes–Alvarado challenges the district court's application of a sixteen-level increase in his base level pursuant to U.S.S.G. § 2L1.2(b). That subsection provides:

Specific Offense Characteristics

If more than one applies, use the greater:

(1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of

3. Cal. Fam.Code § 7611 replaced Cal. Civ.Code § 230 in 1975. However, the provisions are substantially the same.

the immigration laws, increase by 4 levels.

(2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

 Viramontes–Alvarado claims that the court erred in applying subsection 2 because he was not deported following a conviction for an aggravated felony. We review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996), and agree with Viramontes–Alvarado.

■ At issue here is whether the crimes for which Viramontes–Alvarado was convicted constituted "aggravated felonies." Application Note 7 to U.S.S.G. § 2L1.2 directs sentencing courts to look to 8 U.S.C. § 1101(a)(43) for the definition of what constitute aggravated felonies.

Prior to 1990, Section 1101(a)(43) provided: The term "aggravated felony" means murder, any drug trafficking crime ... or any illicit trafficking in any firearms or destructive devices ... or any attempt or conspiracy to commit any such act, committed within the Untied States.

The Immigration Act of 1990 amended Section 1101(a)(43) to expand the definition of aggravated felonies to include "any crime of violence ... for which the term of imprisonment imposed is at least 5 years."

In *Fuentes–Barahona,* 111 F.3d at 651, we held that the 1990 amendment does not apply to sentencing for felony convictions prior to November 1990. *Id.* at 652–53. We found that, pursuant to 8 U.S.C. § 1101(a)(43)(F), only a "crime of violence" committed on or after November 29, 1990, is an "aggravated felony" because of the effective date provision that applies to that code section. *Id.* at 652 (citing Pub.L. No. 101–649, § 501(b), 104 Stat. at 5048).

Because Viramontes–Alvarado's convictions for Robbery with a Deadly Weapon and Kidnapping were not classified as "aggravated felonies" under § 1101(a)(43) at the time of his sentencing, the application of a sixteen-level enhancement under U.S.S.G. § 2L1.2(b) was erroneous.

We therefore vacate affirm the conviction except for the district court's sixteen-level enhancement of Viramontes–Alvarado's sentence under U.S.S.G. § 2L1.2(b)(2) and remand for resentencing consistent with this opinion.

CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED.