**UNITED STATES of America,
Plaintiff,**

v.

**Ruben FLORES–VILLAR, Defendant.**

**No. 06cr0592 BTM.**

United States District Court,
S.D. California.

May 16, 2007.

## ORDER GRANTING MOTION IN LIMINE TO PRECLUDE EVIDENCE RE: DERIVATIVE CITIZENSHIP

MOSKOWITZ, District Judge.

The United States has filed a motion in limine to preclude evidence regarding Defendant's claim of derivative citizenship through his U.S. citizen father. For the reasons discussed below, the United States' motion is **GRANTED**.

### I. *BACKGROUND*

Ruben Flores–Villar ("Defendant") was born on October 7, 1974 in Tijuana, Mexico. His biological mother, Maria Mercedes Negrete, is a citizen and national of Mexico. His biological father, Ruben Trinidad Floresvillar–Sandez ("Floresvillar"), was sixteen-years old when Defendant was born. A Certificate of Citizenship was issued to Floresvillar in 1989 based on the fact that his mother, Eva Carolina Sandez–Machado ("Sandez"), is a United States citizen.

Shortly after Defendant was born, he came to the United States to receive medical treatment. (Floresvillar Decl. (Def.'s Exh. C) ¶ 9.) After he was released from the hospital, he came to live with Floresvillar and Sandez in San Diego. (*Id.*) Defendant grew up with Floresvillar, Sandez, and Floresvillar's siblings in San Diego and Chula Vista. (Floresvillar Decl. ¶ 10.) Defendant had little contact with his biological mother who continued to live in Mexico. (*Id.* at ¶ 11.) In 1985, Floresvillar filed an acknowledgment of paternity with the civil registry in Tijuana. (Def.'s Exh. P.) Floresvillar claimed Defendant as a dependent and identified him as his son on his tax returns for years 1983, 1989, 1990, and 1991. (Def.'s Exh. S.)

Recently, Defendant applied for a Certificate of Citizenship under Sections 309(a) and 301(g) of the INA. The District

Director denied the application on the ground that Defendant could not establish that his father, prior to his birth, had been physically present in the United States for at least ten years, five of which followed his fourteenth birthday, as required by former section 301(a)(7) of the INA. Defendant appealed the District Director's decision.

In a decision dated March 29, 2007, the Administrative Appeals Office ("AAO") dismissed the appeal. The AAO held that section 301(g) of the INA, as amended in 1986, required that Defendant's father have been physically present in the United States for only five years prior to the applicant's birth, two of which followed his fourteenth birthday. However, the AAO held that the evidence of record was not sufficient to establish that his father had met the physical presence requirement. In addition, the AAO held that the evidence in the record was insufficient to establish that Defendant's father agreed to support Defendant financially until he reached the age of eighteen, as required by section 309(a)(3) of the INA (added in 1986).

In a decision dated April 2, 2007, the AAO determined that it had misapplied the physical presence requirements of section 301(g) and reopened the matter for further consideration. The AAO held that, contrary to its prior decision, the applicable physical presence requirement was ten years, five of which followed his father's fourteenth birthday. The AAO explained that in its initial decision, the AAO failed to distinguish between section 23(d) of the Immigration Technical Corrections Act of 1988 (which provided that the 1986 amendment to section 301(g) of the Act applies to persons born on or after November 14, 1986) and section 23(e) (which governs when the 1986 amendments to section 309(a) apply). The AAO concluded that because Defendant's father was only six-

teen at the time Defendant was born, he could not meet the applicable residency requirements.

## II. *DISCUSSION*

The Government seeks the exclusion of evidence regarding Defendant's derivative citizenship claim on the ground that he cannot satisfy the transmission-of-citizenship requirements of INA §§ 309(a) and 301(g), 8 U.S.C. §§ 1409(a) and 1401(g). The Court agrees that even viewing the evidence in the light most favorable Defendant, no reasonable juror could find that Defendant could establish derivative citizenship through his citizen father. Therefore, any evidence of Defendant's father's citizenship, residency, or legitimating acts is not relevant.

### A. *Residence Requirement*

When Defendant was born, the applicable law provided that a person shall be a national and a citizen of the United States at birth who is:

> born outside of the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States, who, *prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.*

INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (later redesignated as INA § 301(g), 8 U.S.C. § 1401(g)). (Emphasis added.)

Pursuant to INA § 309(a), section 301(a)(7) was made applicable to children born out of wedlock to U.S. citizen fathers "if the paternity of such child is established while such child is under the age of twenty-one by legitimation." Legitimation could occur under the law of the child's

residence or domicile or under the law of the father's residence or domicile. 8 U.S.C. § 1101(b)(1)(C).

In 1986, section 301(g) was amended, and the physical presence requirement was changed to "five years, at least two of which were after attaining the age of fourteen years." Immigration and Nationality Act Amendments of 1986, Pub.L. 99–653, 100 Stat. 3655, § 12. The 1986 amendments also amended section 309(a), adding additional requirements for the transmission of citizenship to a child born out of wedlock.[1] *Id.* at § 13.

The Immigration Technical Corrections Act of 1988 ("ITCA") clarified that "[t]he amendment made by section 12 [of the 1986 Act] shall apply to persons born on or after November 14, 1986." Pub.L. 100–525, 102 Stat. 2609, § 23(d). The ITCA also provided that the new section 309(a) "shall apply to persons who have not attained 18 years of age as of the date of the enactment of this Act," and that the old section 309(a) shall apply to "any individual who has attained 18 years of age as of the date of the enactment of this Act," and "any individual with respect to whom paternity was established by legitimation before such date." *Id.* at § 23(e).

■ To determine which physical presence requirements apply here, the Court looks to section 23(d) of the ITCA, which provides that the new physical presence requirements apply to persons *born on or after November 14, 1986.* Because Defendant was born before November 14, 1986, he must show that prior to his birth, his father was physically present in the United States for not less than ten years, at least five of which were after attaining the age of fourteen years.

In light of the fact that Floresvillar was sixteen when Defendant was born, he could not have satisfied the requirement of physical presence in the United States for five years after attaining the age of fourteen years. Therefore, Floresvillar did not transmit U.S. citizenship to Defendant.

■ Defendant contends that the ITCA is unconstitutional because it operates retroactively to deprive people like Defendant of their vested right to citizenship.[2] However, the 1988 law only clarified the effect of the 1986 amendment and did not make the 1986 amendment inapplicable where it was otherwise applicable or vice versa. It has long been established that *the law in effect at the time of the child's birth* is to be applied in determining transmission of citizenship from a U.S. citizen parent. *See, e.g., Rodriguez–Romero v. INS,* 434 F.2d 1022 (9th Cir.1970) (per curiam), *cert. denied,* 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971); *Ablang v. Reno,* 52 F.3d 801, 803 (9th Cir.1995) ("The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. Citizen is the statute that was in effect at the time of the child's birth.")

---

1. As amended, section 309(a) provided:

    The provisions of paragraphs (c),(d), (e), and (g) of section 301 ... shall apply as of the date of birth to a person born out of wedlock if a blood relationship between the person and the father is established by clear and convincing evidence, provided the father had the nationality of the United States at the time of the person's birth, the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of eighteen years and if, while such child is under the age of eighteen years, (1) such child is legitimated under the law of the child's residence or domicile, or (2) the father acknowledges paternity of the child in writing under oath, or (3) paternity of the child is established by adjudication of a competent court.

2. According to Defendant, prior to the enactment of ITCA, his father had satisfied the shortened residency requirement as well as the other requirements for transmission of citizenship.

(quoting *Runnett v. Shultz*, 901 F.2d 782, 783 (9th Cir.1990)). Thus, the shortened residency requirements were never applicable to Defendant, and the 1988 law did not retroactively deprive Defendant of a vested right to citizenship.

Relying on *Cuevas–Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir.2005), Defendant makes the alternate argument that his paternal grandmother's residency should be imputed to his father, who was a minor at the time of Defendant's birth. However, *Cuevas–Gaspar* is inapposite. In *Cuevas–Gaspar*, the issue was whether a parent's *permanent residence status* could be imputed to an unemancipated minor child for purposes of satisfying the cancellation of removal requirement that the alien had resided in the United States continuously for seven years "after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). Here, the relevant requirement is that the father have resided in the United States for at least five years *after the age of fourteen.* Therefore, what Defendant asks us to do is either impute the grandmother's age at the time of Defendant's birth to Defendant's father or impute the fact that at the time Defendant was born the grandmother had resided in the United States for more than five years after *she* turned fourteen. Neither of these options is supported by the language of the statute or caselaw.

The residency requirement of section 301(g) is objective and straightforward. The Ninth Circuit has refused to apply the theory of constructive residence to transmission of citizenship cases, *see Runnett v. Shultz*, 901 F.2d 782 (9th Cir.1990), and has never held that imputation of any kind would be proper in the context of transmission of citizenship. As provided in 8 U.S.C. § 1421(d), "A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not

otherwise." Although citizenship under section 309(a) is retroactive to the date of birth, it is a naturalization under 8 U.S.C. § 1421(d). *Nguyen v. INS*, 533 U.S. 53, 72, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). The language of § 301(g) is clear and does not provide for imputation. Accordingly, Defendant's grandmother's physical presence in the United States and/or age cannot be imputed to Defendant's father.

## B.  *Equal Protection*

Defendant argues that the residency requirements set forth in section 301(g) (formerly section 301(a)(7)) violate the Equal Protection Clause because they discriminate on the basis of gender as well as age.

### 1.  *Gender Discrimination*

A child born after December 23, 1952, outside of the United States to an unmarried U.S. citizen mother acquires U.S. citizenship at birth if the mother had previously been physically present in the United States for a continuous period of one year. 8 U.S.C. § 1409(c). Defendant argues that the different residency requirement for unmarried men is not substantially related to an important governmental interest.

It is unclear whether a lesser degree of scrutiny applies to gender-based classifications in the immigration context. *See Nguyen v. INS*, 533 U.S. 53, 61, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). However, section 301(g) survives scrutiny under either the intermediate scrutiny standard or the rational basis standard.

The Government points out that legislative history suggests that Congress was concerned with harmonizing United States law with the laws of foreign countries. In 1938, President Roosevelt submitted to Congress a report proposing a revision and codification of the nationality laws of the United States. *Nationality Laws of*

*the United States: Message from the President of the United States,* 76th Cong., 1 st Sess., Pt. 1, at V (House Comm. On Immigration and Naturalization 1939) ("Proposed Code"). Section 204 of the Proposed Code provided that in the absence of legitimation, a child born out of wedlock in a foreign country shall be held to have acquired at birth the nationality of his or her United States citizen mother. Comments to this section noted: "It may be observed finally that the laws of some thirty foreign countries contain provisions for the nationality of illegitimate children, in the absence of acknowledgment or legitimation, and in all but Turkey such children follow the mother's nationality in the absence of any act legally establishing filiation."

A senate report regarding the revision of immigration and nationality laws specifically stated: "This provision [section 309] establishing the child's nationality as that of the mother regardless of legitimation or establishment of paternity is new. It insures that the child shall have a nationality at birth." S.Rep. No. 1137, 82d Cong., 2d Sess. 39 (1952).[3] In other words, Congress eased restrictions on the transfer of U.S. citizenship from an unmarried U.S. citizen mother to her child born in a foreign country to address situations where the child would otherwise fail to qualify as a U.S. citizen (due to the mother's failure to meet the substantial physical presence requirement), and the foreign country would refuse to recognize the child as one of its citizens, deeming the child to have acquired the nationality of his mother.

There is a need for "special judicial deference to congressional policy choices in the immigration context." *Fiallo v. Bell,*

430 U.S. 787, 793, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Given what appear to be bona fide reasons for applying different physical presence requirements to unwed U.S. citizen mothers and U.S. citizen fathers, the Court rejects Defendant's Equal Protection argument.

### 2. *Age Discrimination*

■ In addition to arguing gender discrimination, Defendant argues that he was discriminated against on the basis of age—i.e., the physical presence requirement discriminates against unwed U.S. citizen fathers under the age of 19. This argument lacks merit.

The government has an important interest in fostering ties between the foreign-born child and the United States. *Nguyen v. INS,* 533 U.S. at 69, 121 S.Ct. 2053; *Miller v. Albright,* 523 U.S. 420, 438, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (Stevens, J.). The requirement that the U.S. citizen father had been physically present in the United States for 10 years, at least five of which were past the age of fourteen, furthers this objective by ensuring that the father developed significant ties with the country at an age of maturity. Therefore, the requirement is rationally related to a legitimate governmental interest.

### III. *CONCLUSION*

Because Defendant's father cannot satisfy the physical presence requirement of section 301(g), no reasonable juror could find that Defendant could establish derivative citizenship through his father. Accordingly, evidence of Defendant's father's citizenship, residency, or legitimating acts is not relevant, and the Government's mo-

---

**3.** That Congress was concerned about the potential for statelessness is substantiated by the fact that the physical presence requirement applicable to unwed U.S. citizen fathers is the same as the physical presence requirement

for a citizen father *or citizen mother* who has a child outside of the United States while married to a citizen of another country. 8 U.S.C. § 1401(g). An exception was carved out for unwed U.S. citizen mothers only.

tion exclude such evidence is **GRANTED.** The parties shall appear before the Court for further proceedings on **May 21, 2007 at 9:00 a.m.**

**IT IS SO ORDERED.**